**UNITED STATES of America, Appellee,**

v.

**Faustino GRANA, Appellant.**

**No. 88–5389.**

United States Court of Appeals, Third Circuit.

Jan. 3, 1989.
As Amended March 17, 1989.

Before BECKER, HUTCHINSON and COWEN, Circuit Judges.

## OPINION OF THE COURT

BECKER, Circuit Judge.

This is an appeal by a federal prisoner, acting *pro se*, from an order of the district court denying the motion to correct his presentence investigation report pursuant to Fed.R.Crim.P. 32. The threshold question before us is whether appellant filed his notice of appeal within the time specified by Rule 4(b) of the Federal Rules of Appellate Procedure. If the appeal was untimely, we lack jurisdiction to consider it. For the reasons that follow, we conclude that in computing the timeliness of filings which are jurisdictional in nature, any delay by prison officials in transmitting notice of a final order or judgment to an incarcerated *pro se* litigant should be excluded from the computation. Because the effect of prison delay on the timeliness of this appeal is unclear on the record, we will vacate the order of denial, and remand to the district court to make the necessary factual determinations.

### I.

Appellant, Faustino Grana, is an inmate at the Metropolitan Correctional Center (MCC) in New York, maintained by the U.S. Bureau of Prisons. On February 5, 1986, appellant pled guilty to one count of possession with intent to distribute approximately one and one-half pounds of cocaine, a Schedule II controlled substance.[1] On March 12, 1986, he was sentenced to five years imprisonment. Instead of filing a direct appeal, appellant began a series of collateral attacks on his sentence, starting with a motion to reduce his sentence, pursuant to Federal Rule of Criminal Procedure 35. The district court denied this motion by order entered April 10, 1986. Appellant then moved to vacate sentence pursuant to 28 U.S.C. § 2255. The district court denied that motion on October 7, 1986.[2]

On October 7, 1986, approximately seven months after sentencing, appellant filed the first of several motions aimed at correcting alleged inaccuracies in his pre-sentence investigation report (PSI) pursuant to Feder-

---

1. Pursuant to a plea agreement, the remaining counts were dismissed.

2. Appellant's Rule 35 motion was a general plea for mercy. His § 2255 motion raised the following allegations: (1) his privilege against self-incrimination was violated; (2) his conviction was obtained by use of evidence gained pursuant to an unlawful arrest; (3) the prosecution failed to disclose evidence favorable to the defendant; and (4) his conviction was obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

al Rule of Criminal Procedure 32.[3] The procedural history of the motions and the court's corresponding orders are set out in the margin.[4] Appellant appeals the district court's final order, entered April 18, 1988, denying his motion to hold the Bureau of Prisons in contempt.

Appellant filed a notice of appeal from this order on May 13, 1988, twenty-five days following the entry of the district court's final order, and fifteen days out of time. Fed.R.App.Proc. 4(b). Appellant contends that MCC negligently handled his incoming mail, and as a result he did not receive the district court's final order until May 5, 1988, after the expiration of the appeal period. He therefore contends that his appeal should be treated as filed within the jurisdictional time limits.

## II.

Rule 4(b) provides that "in a criminal case the notice of appeal by a defendant shall be filed in the district court within 10 days after the entry of the judgment or order appealed from." The timely filing of a notice of appeal is a mandatory jurisdictional prerequisite to the right to appeal. *United States v. Robinson*, 361 U.S. 220, 224, 80 S.Ct. 282, 285, 4 L.Ed.2d 259 (1960); *Rothman v. United States*, 508 F.2d 648, 651 (3d Cir.1975). Because appellant filed his notice of appeal more than ten days after the entry of the district court's final order, we must determine whether we possess jurisdiction to consider the merits. *See Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986); *Lovell Manufacturing v. Export–Import Bank*, 843 F.2d 725, 729 (3d Cir.1988).

Appellant acknowledges that his appeal is technically out of time, but argues that he has proffered a compelling justification for his late filing. As we have noted, he claims that the prison, through its own negligence, did not deliver the court's final order until seven days after the expiration of the time for his appeal. Furthermore, appellant alleges that the Bureau of Prisons failed to comply with its own policy of tracking incoming legal mail by logging the date of the mail's arrival and the date of the mail delivery to the intended recipient.[5] He argues that it would be unfair to hold him responsible for MCC's negligence and that this court must grant him his opportunity to have his appeal heard.[6]

3. Essentially, appellant alleged that the PSI erroneously stated that he had threatened his co-defendant in order to prevent the codefendant's testimony. Appellant claimed that despite the sentencing court's agreement not to rely on this portion of the PSI because the court had found it to be untrustworthy the United States Bureau of Prisons repeatedly denied his application for a furlough based on the questionable statements.

4. In response to appellant's October 7 motion to correct the PSI, the district court ordered that appellant's objections be appended to the PSI. Approximately five months later, appellant filed a second motion to correct the PSI, contending that he was never given adequate opportunity to review and challenge the report prior to sentencing. The district court denied the motion by order entered May 26, 1987. Appellant followed with another motion pursuant to Rule 32, which prompted the district court to order on November 12, 1987, that prison authorities could not rely upon any allegations contained in the PSI which had been found by the Court to be untrustworthy. The court further ordered that the Bureau reconsider appellant's application for a furlough.

Shortly thereafter, appellant filed a motion requesting the court to hold the Bureau of Prisons in contempt for failing to comply with the court's order of November 12, 1987. The court declined to find contempt of court, but ordered the Bureau to notify appellant of its decision on the furlough application. Appellant filed three more motions to hold the Bureau in contempt. By order entered April 18, 1988, the district court denied the motions, finding them to be moot, without merit, or calling for relief which the court had no power to grant.

5. The record indicates that appellant has filed an informal administrative complaint with the prison, requesting that legal mail be processed in accordance with prison policy.

6. As of May 5, 1988, the date appellant claims that he received notice of the final order, he could have filed a motion to extend the time for filing his notice of appeal pursuant to F.R.A.P. 4(b). Furthermore, had there been a showing of excusable neglect, the district court would have had the authority to consider an extension *sua sponte*. However, these procedural avenues for attaining appellate review are subject to district court discretion and therefore, do not compensate for the right to appeal which is lost due to prison delay.

In *Houston v. Lack,* —— U.S. ——, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), the Supreme Court addressed the effect of delay in transmission of court papers by prison authorities on the timeliness of a notice of appeal. *Houston* held that *pro se* prisoners' notices of appeal are deemed "filed at the moment of delivery to prison authorities for forwarding to the district court". The Court reasoned that *pro se* prisoner litigants have no control over delays in the prison authorities' processing of legal mail and that a prison's failure to act promptly cannot bind them. *Id.* 108 S.Ct. at 2385. The Court observed that *pro se* prisoners have no choice but to entrust their notices of appeal to prison authorities for forwarding to the court clerk. Therefore, it held that the moment at which the *pro se* prisoner litigant loses physical control over the notice of appeal by delivering it to the prison authorities for transmission to the court is the moment at which the notice of appeal is deemed filed. Accordingly, the Supreme Court found that the appellant in *Houston* filed his notice within the requisite 30–day period when, three days before the deadline, he delivered the notice to prison authorities for forwarding to the district court.[7]

The appellant in this case was faced with a situation too similar to be meaningfully distinguishable from *Houston.* Like the appellant in *Houston,* Mr. Grana also lost control over the timeliness of his appeal, and had no choice but to depend upon the prison authorities to deliver to him the notice of the entry of a final order in his case. In addition, appellant's lack of freedom barred him from contacting the district court clerk's office personally to inquire as to the status of his case. Indeed, the facts of the instant appeal, a criminal case, present an even more compelling argument for considering prison delay than the facts of *Houston.* Because the appeal period in criminal cases is shorter than that in civil cases, even a slight prison delay could compromise a prisoner's right to appeal.

*Fallen v. United States,* 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964), upon which *Houston* itself relied, provided further support for the proposition that prison delay cannot undo an otherwise timely appeal. In *Fallen,* a *pro se* prisoner litigant proved that he had delivered his notice of appeal to prison authorities for mailing to the clerk of court within the 10–day appeal period notwithstanding the fact that the clerk's office did not receive the notice of appeal until after the appeal period expired. Emphasizing "the fact that the Rules are not, and were not intended to be, a rigid code to have an inflexible meaning irrespective of the circumstances," the Supreme Court concluded that the prisoner had done all he could under the circumstances, and therefore declined to read the rules to bar his appeal. *Id.* at 142, 84 S.Ct. at 1691; *see also Torres v. Oakland Scavenger Co.,* —— U.S. ——, 108 S.Ct. 2405, 2408, 101 L.Ed.2d 285 (1988) (emphasizing "the important principle ... that the requirements of the rules of procedure should be liberally construed and that 'mere technicalities' should not stand in the way of consideration of a case on its merits.").[8]

In *Smith v. Evans,* 853 F.2d 155, 161 (3d Cir.1988), we were faced with an untimely motion by a prisoner to alter or amend the district court's judgment pursuant to Fed. R.Civ.Pro. 59(e), which led to an untimely notice of appeal. We were potentially confronted with a similar question of how to

---

**7.** Rule 4(a)(1) provides that, in a civil case, the notice of appeal shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from.

**8.** Similarly, in *United States v. Solly,* 545 F.2d 874 (3d Cir.1976), this Court held that receipt of a notice of appeal by the clerk of the district court suffices to meet the "filing" requirement under Rules 3 and 4 even though the notice has not yet been formally noted as "filed" by the Clerk of the Court. If the Court had held otherwise, "the timeliness of the filing would be un-

der the control of the personnel of the clerk's office rather than the appellant. To state the possibility is to reject this construction of ... Rule [4(b)]." 545 F.2d at 876. If the timeliness of filings is not to be under the control of clerk's office personnel, it would seem *a fortiori* that the timeliness of filings is not to be left up to prison authorities whom the prisoner "cannot control or supervise and who may have every incentive to delay." *See Houston v. Lack,* 108 S.Ct. at 2383.

accommodate strict jurisdictional appellate time limitations with basic fairness to imprisoned *pro se* litigants. *Smith*, 853 F.2d at 162. We noted that *Houston v. Lack* demonstrated the Supreme Court's particular solicitousness of the need to preserve the rights of *pro se* prisoners to appeal where the impediment to timely filing arises from the process of transmitting mail from the prison over which the prisoner has no control. We further noted that the facts of *Smith* especially warranted application of the *Houston* principle since the time limit for filing a motion to amend, like the time limit involved in the case at bar, is shorter than the time limit at issue in *Houston*. *Id.* However, we did not have to decide the question whether to exclude delay caused by the prison because Smith's motion was out of time before he even gave the motion to prison officials to mail. Here we must reach the question.

■ The teaching of *Houston* is that prison delay beyond the litigant's control cannot fairly be used in computing time for appeal. We perceive no difference between delay in transmitting the prisoner's papers to the court and transmitting the court's final judgment to him so that he may prepare his appeal. In keeping with the teachings of *Houston* and *Smith*, and our desire to avoid creating technical pitfalls to hearing appeals on the merits, we hold that in computing the timeliness of *pro se* prisoners' appeals, any prison delay in transmitting to the prisoner notice of the district court's final order or judgment shall be excluded from the computation of an appellant's time for taking an appeal.

Our holding does not disturb the basic principle that lack of notice of a final judgment does not affect the running of the time for appeal. *See Hall v. Community Mental Health Center of Beaver County*, 772 F.2d 42 (3d Cir.1985). To the extent that the delay represents slow mail, there is nothing that this Court can do to preserve an appellant's right to appellate review.[9] Federal Rule of Civil Procedure 77(d) specifically provides that failure to receive notice of a judgment does not alter a litigant's responsibility for making timely motions. *Hall*, 772 F.2d at 46. *Houston*, however, instructs that when prison delay interferes with receipt, the prison delay must be subtracted from calculation of time for appeal.

### III.

■ Because the record does not show the date the prison received notice of the district court's final order or conclusively establish the date the prison transmitted the notice to appellant,[10] we will remand to the district court so that it may determine whether, consistent with this opinion, the notice of appeal was timely.[11] The prison will be the party with best and perhaps only access to the evidence needed to resolve such questions. *Houston*, 108 S.Ct. at 2385. We therefore interpret *Houston* as placing the burden on the prison of establishing the relevant dates. This allocation of the burden of proof provides the proper motivation for prison authorities to keep clear and accurate mail logs, which are so essential to preserving appellate rights. *See id.* at 2385 (reference to prison

9. We note that the precipitous decline in the efficiency of the United States Postal Service in recent years, *see e.g., Hearing on Mail Delivery Problems Operations and Services and Postal Personnel and Modernization of the House Committee on Post Office and Civil Service,* 100th Cong.2d Sess., No. 100–53 (June 2, 1988), has given rise to a veritable stream of cases which result in unfairness to *pro se* prisoner litigants who do not receive notice of decision in time to make timely motions. For that reason, this Court recommended in *Smith,* 853 F.2d at 162 that district courts delay entry of their orders and judgments to allow *pro se* prisoners to receive word in time to respond.

10. As noted above, appellant states in his argument opposing dismissal of his case that the prison authorities delivered the notice of the final decision to him on May 5, 1988.

11. We acknowledge that the remand will require an additional fact finding by a district judge who has already shown great diligence and care in considering appellant's numerous petitions, and who has indeed afforded him relief more than once. However, we are concerned here with process, and we are obliged to clarify the law in the wake of *Houston*. Obviously we intimate no view as to whether appellant is entitled to any further relief.

mail logs should generally be a straightforward inquiry).[12]  We will retain jurisdiction meanwhile.

12.  Indeed, the Code of Federal Regulations provides that prison staff

... shall mark each envelope of incoming legal mail (mail from courts or attorneys) to show the date and time of receipt, the date and time the letter is delivered to an inmate and opened in the inmate's presence, and the name of the staff member who delivered the letter.  The inmate may be asked to sign as receiving the incoming legal mail.  This paragraph applies only if the sender has marked the envelope as specified in § 540.18.

28 C.F.R. § 540.19(a).  We presume that most state correctional institutions have similar regulations.