Wesley Rudolph WILDER, Plaintiff–Appellant,

v.

CHAIRMAN OF THE CENTRAL CLASSIFICATION BOARD; Commonwealth of Virginia; Department of Corrections; Authority at Nottoway Correctional Center; Commonwealth of Virginia, Department of Corrections, Defendants–Appellees.

No. 88–6704.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 3, 1990.

Decided Feb. 25, 1991.

Anne Nicholson Hogewood, Student Advocate, argued (George K. Walker, on brief), Wake Forest University School of Law, Winston–Salem, N.C., for plaintiff-appellant.

Gayl Branum Carr, Asst. Atty. Gen., argued (Mary Sue Terry, Atty. Gen., William W. Muse, Asst. Atty. Gen., on brief), Richmond, Va., for defendants-appellees.

Before MURNAGHAN and WILKINS, Circuit Judges, and STAMP, District Judge for the Northern District of West Virginia, sitting by designation.

MURNAGHAN, Circuit Judge:

Wesley Rudolph Wilder's 42 U.S.C. § 1983 complaint was dismissed by the district court because Wilder had failed to pay a $35.00 partial filing fee. Wilder mailed a "Motion to Appeal" to a friend in Lynchburg, Virginia, asking her to enclose five dollars and to forward the motion to the court. By the time the motion arrived at the district court, its filing fell outside the thirty-day period prescribed in Federal Rule of Appellate Procedure 4(a)(1).

The district court determined that Wilder was not proceeding in good faith and denied Wilder's application to appeal *in forma pauperis*. Wilder appealed to this court.

We granted leave to proceed *in forma pauperis* and remanded the case to the district court for a determination, under the rule of *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), as to when Wilder gave his notice of appeal to prison authorities or other prison officials. *Wilder v. Chairman, Cent. Classific. Bd.*, 861 F.2d 267 (4th Cir.1988).

Wilder has responded to the *Houston* inquiry, and the district court has returned the case to this court for further proceedings.

## I.

Wilder is an inmate of the Commonwealth of Virginia's Nottoway Correctional Center. On October 29, 1987, he filed a *pro se* 42 U.S.C. § 1983 complaint in the United States District Court for the Eastern District of Virginia, Norfolk Division, alleging that the State's Central Classification Board had unconstitutionally denied his request to be transferred to another prison for hardship reasons.

By Order dated November 30, 1988, the complaint was conditionally filed and the proceedings were continued for ninety days to await information regarding administrative disposition of Wilder's grievances and to allow Wilder to establish that he was entitled to proceed *in forma pauperis*.

On January 25, 1988, in response to the district court's order, Wilder submitted a "Declaration in Support of Request to Proceed *In Forma Pauperis*" in which he declared that he earned $23.00 a month as a prison housekeeping crewman and that he owned a $160.00 television set, a gift from his sister. He further declared that he had $10.46 in his account. Wilder also

submitted the record of his completed inmate grievance proceeding.

By Order dated February 22, 1988, the district court, in response to Wilder's request to proceed *in forma pauperis*, ordered Wilder to pay a partial filing fee of $35.69—fifteen percent of the total of all deposits over the last six months plus the beginning balance—in accordance with our decision in *Evans v. Croom*, 650 F.2d 521 (4th Cir.1981). Wilder was notified of his right to object to paying the partial filing fee and was given the opportunity to present any special circumstances which would justify a different payment or no payment at all. Wilder was given twenty days to comply or suffer dismissal of his action.

In a letter filed on March 7, 1988, Wilder responded that he did not have the fee because he had to buy tennis shoes to exercise in the prison gym. He listed twenty-six cents in his account. The district court, by Order dated March 14, 1988, noted that Wilder had failed to show special circumstances which would justify paying an amount less than the $35.69 but allowed Wilder an additional fifteen days to comply. Wilder was also advised that failure to pay would result in dismissal.

Wilder never responded, and by Order dated April 11, 1988, the complaint was dismissed without prejudice.

On April 20, 1988, Wilder signed a "Motion to Appeal" and had it notarized by Daniel Coles.[1] If promptly filed, it would have been timely. However, Wilder addressed and sent the motion to a female friend in Lynchburg, Virginia, asking her to enclose five dollars with the motion and to forward it to the court.

The "Motion to Appeal" was first sent to the clerk of this court, who marked it filed on May 18, 1988. This court then forwarded Wilder's motion to the district court, which filed it on May 20, 1988.

The district court construed Wilder's notice of appeal as a motion for leave to proceed *in forma pauperis* and found that Wilder was attempting to appeal in an effort to circumvent the district court's earlier decision requiring him to pay the partial filing fee. Accordingly, the court determined that Wilder was not proceeding in good faith, and by Order and Judgment dated June 14, 1988, denied his application to appeal *in forma pauperis*. Wilder appealed to this court.

On September 30, 1988, we granted leave to proceed *in forma pauperis* and remanded the case to the district court for a determination, under the rule set forth in *Houston*, 487 U.S. at 270, 108 S.Ct. at 2382, as to when Wilder gave notice of appeal to prison authorities or other prison officials.

By Order dated October 28, 1988, the district court directed Wilder "to respond under penalty of perjury ... [as to] the time and place when he gave his notice of appeal to prison authorities" or to federal officials including postal officials.

Wilder's sworn response stated that, because he was confused as to the exact procedure required to preserve his appeal, he sent the necessary papers to a friend and later discovered that the papers had not been timely forwarded to the district court.

Although given the opportunity, the Attorney General took no exception to Wilder's response. The district court, by Order dated December 15, 1988, returned the case to this court for disposition.

## II.

We consider first whether Wilder's filing was timely under *Houston*.

It is, of course, well settled that the time periods established by Federal Rule of Appellate Procedure 4 are " 'mandatory and jurisdictional.' " *Browder v. Director, Dep't of Corrections*, 434 U.S. 257, 264, 98 S.Ct. 556, 561, 54 L.Ed.2d 521 (1978) (quoting *United States v. Robinson*, 361 U.S. 220, 229, 80 S.Ct. 282, 288, 4 L.Ed.2d 259 (1960)). In *Houston*, the Supreme Court added some flexibility to the Rule by hold-

---

**1.** The record does not reflect with whom Coles was associated.

ing that *pro se* prisoners' notices of appeal are deemed filed with the district court when delivered to prison authorities for forwarding and filing. 487 U.S. at 270, 108 S.Ct. at 2382.

The district court ordered Wilder's § 1983 claim dismissed on April 11, 1988. Under Federal Rule of Appellate Procedure 4(a)(1), Wilder had thirty days to file a notice of appeal. Thus, under *Houston,* Wilder could have timely filed his notice of appeal by delivering it to prison authorities or the prison post office on or before May 11, 1988 for forwarding to the district court.

▆ Wilder signed and had notarized his "Motion to Appeal" on April 20, 1988, but has not answered the inquiry as to the date that he gave his notice of appeal to prison authorities for mailing. The date is of no moment, however, because the filing rule established by *Houston* does not apply when a prisoner gives a notice of appeal to prison authorities for delivery to an entity other than a federal court. The *Houston* Court expressly stated that "delivery of a notice of appeal to prison authorities would not under any theory constitute a 'filing' unless the notice were delivered for forwarding to the district court." *Id.* at 273, 108 S.Ct. at 2383. Wilder delivered his notice for forwarding to a friend in Lynchburg, Virginia.

Wilder argues that the liberal pleading requirements of *Haines v. Kerner,* 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), should be applied and that we should hold that the prison authorities' failure timely to forward Wilder's notice to his friend in Lynchburg violated *Houston.* That assertion fails for two reasons. First, the policy underlying the *Houston* decision was that prisoners should not be penalized for the dilatory tactics of prison officials in negligently or intentionally mishandling the prisoners' time-sensitive legal papers, tactics over which the prisoner has little or no control. Here, however, Wilder addressed the papers to a friend, placing them outside the control of prison authorities and into the hands of a person over whom, arguably, he exercised some control. Wilder admits that he later telephoned the friend and learned that she had neither mailed the money nor the notice of appeal promptly, and as a result, Wilder missed the May 11 deadline.

Second, the notarization of Wilder's "Motion to Appeal" on April 20, 1988 is insufficient to establish delivery to prison officials on that date. We held in *Washington v. Bumgarner,* 882 F.2d 899 (4th Cir.1989), that "[w]hile notarization of a notice of appeal is not required, it provides an easy way to determine when an appeal was filed, thus preventing a lengthy dispute over this threshold fact. In particular, the notary public's certification serves as prima facie evidence that plaintiff delivered his notice of appeal to prison officials on June 14 and signed or verified his signature on that date." *Id.* at 901–2 (citation omitted). Although the opinion does not indicate whether the person who notarized the notice of appeal was a prison official, the appellant in *Bumgarner,* unlike Wilder, addressed his papers to the court, and not to a private party. Had Wilder addressed his papers to the court, he might have used the *Bumgarner* argument to establish the date of delivery.

Wilder also invokes *Houston* to argue that because the district court did not inquire as to when the prison officials received the court's April 11, 1988 Judgment and Order, or as to when those officials forwarded the Judgment and Order to Wilder, the case should be remanded for further findings. In support of that proposition, Wilder cites *United States v. Grana,* 864 F.2d 312 (3d Cir.1989), which applied *Houston* to hold that there was "no difference between delay in transmitting the prisoner's papers to the court and transmitting the court's final judgment to him so that he may prepare his appeal." *Id.* at 316. The *Grana* court remanded the case to the district court to determine when the prison had received notice of the final order

and when such order had been transmitted to the prisoner.

*Grana* is distinguishable from the instant case for two reasons. First, the appellant in *Grana* alleged from the outset that the prison had negligently mishandled his incoming mail, and that as a result he did not receive the district court's final order until seven days after the expiration of the time for appeal. Wilder made no similar allegation at any point in the proceedings. Viewing the instant facts here, one could not reasonably infer that the prison had negligently mishandled Wilder's incoming mail, particularly in light of the fact that he had prepared and notarized his response nine days after the issuance of the judgment and order.

Second, *Grana* was a criminal proceeding in which the appellant had only ten days to file his notice of appeal. The *Grana* court thus found compelling the argument to apply *Houston* to incoming mail because "even a slight delay could compromise a prisoner's right to appeal." *Id.* at 315. We find no similar compelling circumstance here.

■ Beyond attempting to bring his facts within *Houston*'s mailbox rule, Wilder argues that his "Motion to Appeal" should be construed as a motion for extension of time under Federal Rule of Appellate Procedure 4(a)(5).

We ruled in *Shah v. Hutto*, 722 F.2d 1167 (4th Cir.1983) (en banc), *cert. denied*, 466 U.S. 975, 104 S.Ct. 2354, 80 L.Ed.2d 827 (1984), that "[a] bare notice of appeal should not be construed as a motion for extension of time, where no request for additional time is manifest." *Id.* at 1168–69. In *Washington v. Bumgarner*, 882 F.2d 899 (4th Cir.1989), we had occasion to consider whether *Shah* still was viable in the wake of *Houston*, finding that "*Hous-*

*ton* and *Shah* are complimentary, because *Houston* assures that a bare notice of appeal will not be untimely due to the delay of prison authorities." *Id.* at 901. And, in *Myers v. Stephenson*, 781 F.2d 1036 (4th Cir.1986), we carved out a narrow exception to *Shah*. There the appellant, like Wilder, suffered an untimely filing caused at least in part by his failure properly to address his notice of appeal. Myers, however, took the additional and legally significant step of writing a letter to the district court clerk because he was concerned that his filing might be untimely. The district court then granted an extension *sua sponte*, finding that the letter "evince[d] a desire to preserve the appeal." *Id.* at 1038. Wilder took no such step, and we are thus left to conclude that his bare notice of appeal cannot be construed as a motion for extension of time under Federal Rule of Appellate Procedure 4(a)(5).

■ We do, however, make use of the opportunity to advise district courts that while not mandated, the preferable practice is to include a statement to all final orders involving *pro se* litigants setting forth the litigants' appellate rights. This statement should simply notify the litigant of his right to appeal, the applicability of Rules 3 and 4 of the Federal Rules of Appellate Procedure, and the necessity of moving for an extension of time, in addition to the filing of the notice, during the second thirty-day period. *See, e.g., United States ex rel. Leonard v. O'Leary*, 788 F.2d 1238, 1240 (7th Cir.1986); *Pryor v. Marshall*, 711 F.2d 63, 65 n. 4 (6th Cir.1983); *Mayfield v. United States Parole Comm'n*, 647 F.2d 1053, 1055 n. 5 (10th Cir.1981).[2]

We thus conclude that Wilder's "Motion to Appeal" was not timely filed and cannot be construed as a motion for extension of time under Federal Rule of Appellate Pro-

---

**2.** Wilder also argues that because the district court failed to apprise him of the proper procedures for seeking an appeal after dismissing his claim, this court should permit Wilder's appeal even if a few days out of time, citing *Liles v. South Carolina Dep't. of Corr'ns*, 414 F.2d 612

(4th Cir.1969). We do not issue our suggestion to the district courts in response to the assertion—finding it to be without merit—but rather to reduce the number of cases where a *pro se* plaintiff or defendant seeks to escape Federal

cedure 4(a)(5).[3]  Accordingly, the judgment of the district court is

AFFIRMED.

---

Rule of Appellate Procedure 4 by showing inadvertent or excusable error.

3. The dismissal having been without prejudice, Wilder is, of course, free to file another suit seeking a transfer from his current prison to a prison closer to his home.