**Anthony Ray JENKINS,**
**Plaintiff–Appellant,**

v.

**Jill BURTZLOFF and Linda Triggs,**
**Defendant–Appellees.**

**No. 94–3243.**

United States Court of Appeals,
Tenth Circuit.

Oct. 31, 1995.

Carl E.K. Johnson, Denver, Colorado, for Plaintiff–Appellant.

Kenneth R. Smith, Department of Social Services, Topeka, Kansas, for Defendant–Appellee.

Before EBEL and McKAY, Circuit Judges, and COOK, District Judge *.

H. DALE COOK, Senior District Judge.

## I. INTRODUCTION

The plaintiff, Anthony Ray Jenkins, brought an action ostensibly under 42 U.S.C. § 1983. The district court held that Jenkins' complaint was, in essence, a petition for a writ of habeas corpus and dismissed it for failure to exhaust state remedies by an order dated April 28, 1994 and filed the same date.[1] Jenkins alleges that because of transfers from facility to facility while he was in continuous custody he did not receive his copy of the order in the mail until after he was

---

* Honorable H. Dale Cook, Senior United States District Judge for the Northern, Eastern and Western Districts of Oklahoma, sitting by designation.

1. In the header of this opinion we have styled this case as the plaintiff originally did and as he urges us to do on appeal. In doing so we do not intend to pass on the merits of his appeal. At this time we render no decision on the merits.

returned to the Seward County Jail on July 12, 1994. He also alleges that he mailed his notice of appeal on the same date; the notice of appeal was date stamped by the court clerk: July 20, 1994.

Jenkins' appeal was dismissed for untimeliness but was reopened upon his petition for rehearing and he was appointed counsel to discuss, along with such other issues as he might consider appropriate, the issue whether the delay in Jenkins' receipt of the district court order should be considered in determining the timeliness of the appeal.

After an examination of the record on appeal and other relevant papers filed with us in this case we conclude that even if we accept as true the unverified allegations in Jenkins' papers he failed to meet the requisite time limits for appealing and for moving to extend the time for appeal. In short, we cannot address the merits of his appeal because we lack jurisdiction over the case.

## II. WHEN TIME FOR APPEAL BEGINS TO RUN UNDER *HOUSTON V. LACK*

In *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) the Supreme Court held that the date of "filing" of a notice of appeal by a prisoner appearing *pro se* is the date the prisoner turns over the notice of appeal to prison officials for mailing. The Court noted in its opinion the lack of control that the prisoner has over his mail once it has left his hands; and the question arises whether a similar reasoning might require the time limit for filing a notice of appeal to be calculated from the date the prisoner receives notice of the entry of the order from which he or she appeals.

In *United States v. Grana*, 864 F.2d 312 (3d Cir.1989) the Third Circuit held that the logic of *Houston* applied in reverse. The court held that delays in the receipt of mail by a prisoner caused by prison officials should not be counted in determining when the time period for appeal begins to run, just as delays after the mailing of a notice of appeal are not counted in determining whether the time limit has been overstepped.

After due consideration of the Third Circuit's reasoning and the arguments made in this case we have determined that we are unable to apply the *Grana* interpretation of *Houston* to this case. Although many or even all of the policy arguments of *Houston* may apply here an attempt to apply the legal justification of the *Houston* holding to the delay in delivery to the prisoner in the case before us is like trying to put a square peg in a round hole.

Although *Grana* was a criminal case, the case it relied upon, *Houston*, was, like the case before us, a civil case. The rationale of *Houston* was not constitutional or equitable in nature; rather, it was based on an interpretation of the word "filed" in the rule and statute governing the timeliness of notices of appeal. The Court held that a notice of appeal could be deemed timely "filed" upon delivery to the prison authorities for mailing. In order to apply this kind of statutory interpretation in reverse we would have to look to the language determining when the time for appeal begins to run and whether that beginning point could be construed to be the time when the prisoner receives notice of the entry of the order to be appealed from.

F.R.A.P. 4(a)(1) provides that a notice of appeal in a civil case generally may be filed "within 30 days of the *date of entry* of the judgment or order appealed from." (emphasis added) 28 U.S.C. § 2107 similarly provides that in such a case a notice of appeal may be filed "within thirty days after the entry of such judgment, order or decree." The date of entry is the beginning point for when the time period begins to run and the question is whether the word "entry" can be construed differently in the case of prisoners who are *pro se* litigants. For a number of reasons it cannot be so construed.

Rule 4(a)(7) defines entry, providing that a judgment or order is "entered" under Rule 4(a) when entered in compliance with Rules 58 and 79(a). Rule 79(a), in turn, provides that the clerk shall keep a book in which all "orders, verdicts, and judgments shall be entered." The Supreme Court has interpreted the Rules to provide that entry means entry on the docket. *Acosta v. Louisiana*, 478 U.S. 251, 106 S.Ct. 2876, 92 L.Ed.2d 192

(1986).[2] We realize that the Rules of Appellate Procedure do not purport to affect the jurisdiction of this court. FED.R.APP.P. 1(b). However, we see no reason why any different definition of "entry" should apply under 28 U.S.C. § 2107.

Even if there were no definition of the word "entry" in the Federal Rules of Appellate Procedure we would not find it a reasonable definition of "entry" that the date of entry of a notice of appeal could be the date upon which it is received by a prisoner because such a construction defies the plain language of 28 U.S.C. § 2107. The absurdity of such a definition could be seen most clearly where a single order or judgment applies to several parties who are incarcerated. The date of entry for a single order could be different for each of the incarcerated parties.

Where a paper is deemed filed on the date it is mailed there is one filing date for the document so there is no similar problem. Although when a paper is deemed served[3] on a particular party on the date it is mailed there may be more than one date of service for each party, service is a concept that relates to individuals and documents simultaneously while entry is a concept that relates solely to the document. When a court clerk is asked what the entry date is of an order or judgment it should not be necessary for the clerk to give a different answer depending on who asks the question. Accordingly, we hold that *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) does not affect the date on which the time for appeal begins to run.

## III. RULE OF APPELLATE PROCEDURE 4(a)(6)

■ We next address the question whether Jenkins' appeal is timely under the provisions of 28 U.S.C. § 2107 and FED.R.APP.P. 4(a). Both provisions require that a notice of appeal be filed within thirty days of the entry of a judgment, order or decree and both contain exceptions to this time limit. 28 U.S.C. § 2107(c) provides (in part):

"[I]f the district court finds—

(1) that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry, and

(2) that no party would be prejudiced,

the district court may, upon motion filed within 180 days after entry of the judgment or order or within 7 days after receipt of such notice, whichever is earlier, reopen the time for appeal for a period of 14 days from the date of entry of the order reopening the time for appeal."

The Federal Rules of Appellate Procedure contain a similar exception:

"The district court, if it finds (a) that a party entitled to notice of the entry of a judgment or order did not receive such notice from the clerk or any party within 21 days of its entry and (b) that no party would be prejudiced, may, upon motion filed within 180 days of entry of the judgment or order or within 7 days of receipt of such notice, whichever is earlier, reopen the time for appeal for a period of 14 days from the date of entry of the order reopening the time for appeal."

FED.R.APP.P. 4(a)(6).

■ There is no dispute that Jenkins failed to file a motion for extension or any document resembling such within the required seven day period. Jenkins did file a notice of appeal that is stamped by the clerk eight days after the date on which he alleges he received notice of the entry of the order below. We will assume, solely for purposes of argument, that his allegations are true and that he mailed the notice of motion the same day he received notice. We will further assume that if the notice of appeal he filed had been instead a motion for extension of time that the motion would have been timely. Even assuming all of that, we would still be

---

**2.** Further support for this interpretation is given by Fed.R.Civ.P. 77(d), which provides: "Lack of notice of the entry by the clerk does not affect the time to appeal or relieve or authorize the court to relieve a party for failure to appeal within the time allowed, except as permitted in Rule 4(a) of the Federal Rules of Appellate Procedure."

**3.** We need not address in this opinion whether *Houston v. Lack* applies to the service of papers on other parties but note merely that such an interpretation is far more reasonable than the extension of the rule to postpone the moment that the time limit begins to run.

compelled by established Tenth Circuit precedent to dismiss his appeal because the filing of his notice of appeal cannot be treated as the equivalent of the filing of a notice of motion for extension of time where a request for additional time is not manifest. This is the rule we have applied to *pro se* litigants seeking relief under Rule 4(a)(5)—which has a 30 day time limit for appeal worded similarly to the 7 day time limit in Rule 4(a)(6). *Senjuro v. Murray,* 943 F.2d 36 (10th Cir.1991); *Mayfield v. United States Parole Comm'n,* 647 F.2d 1053 (10th Cir. 1981).[4] We now hold that the rule of these cases for construing notices of appeal as notices of motion under Rule 4(a)(5) also applies under Rule 4(a)(6).

We have examined Jenkins' notice of appeal and found nothing in it remotely suggesting a request for extension of time or even a recognition of the lateness problem. Subsequent documents dealing with these issues were filed in this court long past the deadline and there has been no allegation that any were mailed within the seven day period. Accordingly, we hold that Jenkins failed to comply with the requirements of Rule 4(a)(6) by failing to file a timely motion for extension of time; and his appeal cannot be deemed timely under that rule.

## IV. EQUITABLE RELIEF AND *FALLEN V. UNITED STATES*

We also reject the notion that general equitable considerations such as the policy arguments of *Houston* can allow a tolling of the time limit for appeal under some rationale separate from the interpretation of the words of the relevant rule and statutory provision.

As important as the policies of *Houston* may be, as we mentioned in the previous section, *Houston* is a case of interpretation of the language of the rules. It provides no authority for equitable tolling. Although several justices have characterized the Court's decision in *Fallen v. United States,* 378 U.S. 139, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964) as a case of equitable tolling[5] they also said that it had no applicability to a civil context governed by the jurisdictional limit of 28 U.S.C. § 2107.[6]

In deciding the case before us it is enough to note that *Fallen* was a narrow decision providing relief where a prisoner had done all he reasonably could have done to comply with the rules. It did not expressly or effectively provide additional time for appeal to all prisoners regardless of their ability to comply with the rules as written.

In our case, the prisoner, by his own admission, mailed the notice of appeal the same day he received notice of entry of the judgment in the court below. He had seven days under FED.R.APP.P. 4(a)(6) to file a motion for extension of time and clearly could have done so about as easily as he filed the notice of appeal. Under these circumstances we note that there was an adequate remedy at law and that the prisoner's failure to qualify for relief was due to his own default, not matters outside of his control. In short, *Fallen* would not save this appeal regardless

---

**4.** It is true that we found the filing of a notice of appeal within a required extension period sufficient in *United States v. Lucas,* 597 F.2d 243 (10th Cir.1979). However, Rule 4(a)(6), like Rule 4(a)(5) (and unlike old rule 4(a) which was controlled by *Lucas*) defines *the length of the time period in which a motion can be made* not the length of the time period of the extension. The interpretations of Rule 4(a)(5) are therefore controlling on this Rule 4(a)(6) issue.

**5.** *Houston v. Lack,* 487 U.S. 266, 281, 108 S.Ct. 2379, 2387–88, 101 L.Ed.2d 245 (1988) (Scalia J. dissenting, joined by Rehnquist, O'Connor and Kennedy). An alternative view is that *Fallen* was based on a rule of construction in the applicable rules of criminal procedure permitting an interpretation that would secure justice. In our case,

the rules expressly prohibit the court from enlarging the amount of time for filing a notice of appeal. FED.R.APP.P. 26(b). However, we need not and do not at this time decide whether the *Fallen* case, properly characterized, might apply to civil appeals because even if it does apply the prisoner is still required to do all he or she reasonably can to comply with the rules, which Jenkins did not do.

**6.** The time limit of 28 U.S.C. § 2107 was held jurisdictional in *Browder v. Director Dep't of Corrections,* 434 U.S. 257, 264, 98 S.Ct. 556, 560–61, 54 L.Ed.2d 521 (1978). In *Stone v. Immigration and Naturalization,* ── U.S. ──, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995) the Court held that such jurisdictional time limits are not subject to equitable tolling.

of whether or not the relief it provided is properly characterized as equitable in nature and regardless of whether the rationale of that case or some similar rationale could conceivably save this appeal under more compelling facts. The time limit has run and we are without jurisdiction under the facts of this case in any event.[7]

## V. RULE OF CIVIL PROCEDURE 60(b)(1)

Notwithstanding the language of FED. R.CIV.P. 77(d) (precluding extensions of time for appeal unless authorized by FED.R.APP.P. 4(a)) we held in *Wallace v. McManus,* 776 F.2d 915 (10th Cir.1985) that relief was available under FED.R.CIV.P. 60(b)(1) when Rule 4(a) did not provide relief. However, where relief was available under Rule 4(a)(5) and the party failed to timely file a motion under that rule we held that Rule 60(b)(1) did not apply. *Senjuro v. Murray,* 943 F.2d 36 (10th Cir.1991). We now similarly hold that where relief is available under the newer Rule 4(a)(6), Rule 60(b)(1) is not available. In the case before us we do not have a prisoner who is disqualified from relief under Rule 4(a)(6) *through no fault of his or her own* (Jenkins was not disqualified for receiving notice more than 180 days after entry or because prejudice to the other party precluded a rule 4(a)(6) extension[8]). Accordingly, Rule 60(b)(1) cannot save his appeal.

## VI. CONCLUSION

We hold that the time limit for appeal commences to run on the date of entry with

the clerk of the order to be appealed from for all parties regardless of their incarcerated status. Where, as is the case here, a prisoner could reasonably have complied with Rule 4(a)(6) but failed to file a timely motion for extension of time and also failed to file a notice of appeal within the normal time limit the prisoner is in default and we are without jurisdiction to hear the appeal.

Appeal dismissed.

McKAY, Circuit Judge, dissenting:

After review of the relevant precedents, I respectfully must dissent. If I were counting noses in the Supreme Court, I might come to a different conclusion. However, the only sound way to predict future Supreme Court action is to apply standard interpretive principles to its past decisions. Following that practice, I am persuaded that the Third Circuit in *United States v. Grana,* 864 F.2d 312 (3d Cir.1989), correctly applied *Houston v. Lack,* 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), to a similar fact situation.

In the case before us, the court puts great emphasis on the fact that the operative and controlling word is "entry" while in *Houston* the operative and controlling word was "filed." As the dissent in *Houston* so ably pointed out, the barriers to interpreting "filed" to mean anything other than receipt by the clerk were as formidable as the barrier to interpreting "entry" to mean anything other than the clerk's act of lodging the

---

**7.** We also reject the notion that procedural avenues subject to district court discretion (such as FED.R.APP.P. 4(a)(6)) are not adequate to deal with the right of appeal lost due to prison delay. *U.S. v. Grana,* 864 F.2d 312 n. 6 (3d Cir.1989). Although the procedural avenues do not address the problem of prison delay specifically they are at least adequate as they apply to the facts of this case.

We need not address at this time the extent of the discretion of the district court in deciding whether to allow an extension under Rule 4(a)(6). It is enough for purposes of the decision we reach at this time to note that appellate review for abuse of discretion might also be used to give effect to the policies of *Houston v. Lack* where the statutory exceptions do apply and that such review would not do the kind of violence to principles of statutory interpretation as would an equitable rule of tolling—fashioned without re-

gard to statutory language—that benefits all prisoners (including those who could have complied with the existing rules in the absence of any such relief).

Because the prisoner defaulted on the 7 day requirement which was within his power to comply with and otherwise qualified for relief under Rule 4(a)(6) (there was no allegation of prejudice to the opposition resulting from the delay) we need not address at this time the question whether relief might be available in some form to a prisoner who loses his right to appeal under Rule 4(a) in a civil case through no fault of his or her own.

**8.** We need not and do not state an opinion pro or con regarding whether any remedies or relief would be available to a prisoner with delayed mail who fails to qualify for a FED.R.APP.P. 4(a) extension through no fault of his or her own.

Judgment in its docket. Effectively, the majority in *Houston* acknowledged that in every situation except *pro se* prisoner cases, "filed" still means receipt by the clerk no matter the equities. The net effect is that the court relied on the uniqueness of the fact that prisoners are under control of the state itself to give "filed" a meaning in their cases that it did not, and still does not, have in any other litigant's case. That is the precise parallel for precisely the same reason for us to hold that "entry," while retaining its "act of the clerk" meaning in all other cases, means "delivery of notice to the prisoner" in *pro se* prisoner cases.

It may be argued that the plain meaning of "entry" is somehow plainer or more emphatic than the plain meaning of "filed." I believe a reading of *Houston,* especially the dissent, and the majority's implicit conclusion that "filed" still *really* means "filed" in all but prisoner cases adequately answers any assertion that the plain meaning of the one word is more emphatic than the plain meaning of the other.

I would apply *Houston,* as set out in *Grana* and expanded on in this brief dissent, to the facts of this case. Thus I would partially remand to the trial court to determine the truth of the time allegations and retain jurisdiction until that task is completed. If the trial court verifies the allegations, I would proceed to the merits.