Michael James **GARVEY**,
Plaintiff–Appellant,

v.

C. Roland **VAUGHN**, III, Chief of Police City of Conyers, Georgia, Lew Comans, Sergeant, DeKalb County Police Department, DeKalb County, Georgia, City of Conyers Police Department, DeKalb County Police Department, DeKalb County, Georgia, Defendants–Appellees.

Raymond **JOHNSON**, Plaintiff–Appellant,

v.

Bruce **COOK**, National Appeal Board, G. Mackenzie Rast, D.J. Southerland, Brian Ross, Executive Assistant, Billie Hodges, Unit Manager, Bruce Ballard, Counselor, Eva Porter, Case Manager, William Eiston, Lt., M. Hinton, Lt., Peggylene Moore, Correctional Officer, Lawson, Physician Assistant, Federal Correctional Institution, Talladega, AL, Defendants–Appellees.

Nos. 90–8400, 91–7205.

United States Court of Appeals,
Eleventh Circuit.

April 8, 1993.

John R. Parker, Jr., Atlanta, GA, for plaintiff-appellant in No. 90–8400.

M. Scott Barksdale, Barksdale and Mobley, Atlanta, GA, for Vaughn and City of Conyers.

Albert Sidney Johnson, Office of DeKalb County Atty., Lisa Anne Foster, Decatur, GA, for Comans & DeKalb County Police Dept.

Edward D. Tumlin, Birmingham, AL, for plaintiff-appellant in No. 91–7205.

Frank W. Donaldson, U.S. Atty., James G. Gann, Winfield J. Sinclair, Asst. U.S. Attys., Birmingham, AL, for defendants-appellees in No. 91–7205.

Before BIRCH, Circuit Judge,
JOHNSON, Senior Circuit Judge, and
THOMAS *, Senior District Judge.

BIRCH, Circuit Judge:

This consolidated appeal presents the first impression issues for this circuit of whether *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988) should be extended to the filing of a pro se prisoner's initial complaint in a 42 U.S.C. § 1983 action and claim under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* The cases arise from a state inmate in Georgia and a federal inmate in Alabama, and respectively involve district courts' granting a motion to dismiss and a motion for summary judgment for the government officials. After review of the record and consideration of the applicable law, we REVERSE and REMAND.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. *Michael James Garvey*

Plaintiff-appellant Michael James Garvey, a Georgia state prisoner, filed a complaint pursuant to 42 U.S.C. § 1983 against various police departments and officers. Garvey alleged that officers used excessive force in arresting him [1] on March 10, 1983, and challenged the legality of his arrest, trial and conviction. Garvey has been incarcerated since his arrest.

Garvey's complaint is dated February 21, 1985, and he avers that he placed the complaint addressed to District Court for the Northern District of Georgia in the institutional mail receptacle on March 7, 1985.[2] His complaint was not received in the clerk's office for the Northern District of Georgia until March 13, 1985. Following an *in forma pauperis* determination, his complaint was filed in district court on April 26, 1985. Dependant on prison personnel to mail his court filings, Garvey cannot explain the delay in the receipt of his complaint in federal court.[3]

---

* Honorable Daniel H. Thomas, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation.

1. Garvey's complaint alleges that the arresting officers without warning unlawfully entered a residence in Rockdale County, Georgia, by kicking in the door and causing Garvey to believe that his life and personal property were in danger of an armed assault. Garvey describes the arresting officers as being in street clothes and alleges that they maliciously shot him while his hands were over his head and a weapon was in his hand. After being shot, Garvey states that he shot one of the arresting officers. Wounded, Garvey announced that he was shot and that he surrendered. He alleges that he was shot a second time. After giving his weapon to the officers, Garvey alleges that he was struck in the face with the stock of a shotgun and that his eyeglasses were smashed. Thereafter, he claims that one of the officers grasped his scrotum and thereby lifted him up and over on his stomach to handcuff him.

2. By affidavit attached to his initial pro se complaint, Garvey explains the delay in mailing his complaint. He states that the typing of the original complaint was completed by another inmate on February 21, 1985, and that this information could be verified through the prison legal typing log. Because the correctional institution did not have photocopying machines or a legal photocopying service, Garvey mailed his complaint to an individual in Miami, Florida, for photocopying on February 22, 1985. He states that he received the original and duplicates during the first week of March, 1985. With first-class postage affixed, he placed his complaint in the institutional mail receptacle on March 7, 1985.

3. Garvey did write a letter to the mail room officer at the correctional institution and asked that he check the outgoing mail log from February 22, 1985, to March 13, 1985, to determine when his complaint was mailed to the district court. There is no evidence in the record that Garvey received a response to his request.

778

Pursuant to 28 U.S.C. § 1915(d), a magistrate judge dismissed as frivolous Garvey's challenges to his arrest, trial and conviction, but ordered that his claim of excessive force proceed.[4] The district court denied Garvey's motion for appointment of counsel. On defendants-appellees' motion to dismiss, the district court subsequently dismissed Garvey's case because it was barred by the Georgia two-year statute of limitations for personal injury actions. In pertinent part, the district court reasoned:

An action is deemed commenced by filing a complaint with the court. Fed. R.Civ.P. 3. Filing is done by filing the complaint with the Clerk of Court. Fed. R.Civ.P. 5(e). The complaint here was not received by the court until March 13, 1985, beyond the statute of limitations. The fact that it was dated February 21, 1985 is irrelevant to this analysis.

R1–32–3. Judgment for defendants-appellees was entered on March 20, 1990.

The district court granted Garvey's motion to appeal *in forma pauperis*. The court specifically noted Garvey's good faith questioning of the statute of limitations bar. On appeal, Garvey argues that *Houston* should be extended to a pro se prisoner whose 42 U.S.C. § 1983 complaint is delivered to prison authorities prior to the expiration of the applicable limitations period, but is not received by the district court until after the limitations period has expired.[5]

## B. *Raymond Johnson*

Plaintiff-appellant Raymond Johnson was an inmate at the Federal Correctional Institution in Talladega, Alabama, when the alleged causes of action arose. Following a report from the Federal Bureau of Investigation that Johnson's wife had received a letter, postmarked Talladega, threatening his life, Johnson was placed in administrative detention for his protection on November 30, 1988, pending an investigation by the Bureau of Prisons. Although the ensuing investigation by prison officials was inconclusive concerning whether Johnson's safety was in jeopardy, the prison administration requested that he be transferred to another institution.

On February 16, 1989, the Southeast Regional Office of the Bureau of Prisons designated Johnson for transfer to the Federal Correctional Institution in Oakdale, Louisiana, where he presently is incarcerated. Prior to the transfer, a nationwide moratorium on federal prison transfers became effective. Consequently, Johnson was not transferred until April 6, 1989. Therefore, he remained in administrative detention from November 30, 1988, until April 6, 1989.

Johnson filed a pro se complaint in the Northern District of Alabama on February 16, 1989, and alleged violations of his rights under the First, Fifth and Eighth Amendments.[6] He contends that he was placed in detention in retaliation for filing administrative grievances and as part of a plot to conceal subversive communist activity at the prison. While he was detained, Johnson claims that he was mistreated in a variety of ways.[7] His case was referred to a magistrate judge.

---

4. On appeal, Garvey has not complained concerning the section 1915(d) dismissal of claims. Therefore, we deem those issues abandoned and do not consider them. *Rogero v. Noone*, 704 F.2d 518, 520 n. 1 (11th Cir.1983).

5. Alternatively, Garvey argues that the district court's interpretation of Georgia's former tolling provisions and present grace period relating to the relevant statute of limitations conflicts with the Georgia Supreme Court's unambiguous construction of a functionally equivalent statute in *Mansfield v. Pannell*, 261 Ga. 243, 404 S.E.2d 104 (1991), which was decided subsequent to the district court's ruling in Garvey's case. We need not reach this issue or interpret Georgia law relating to the applicable statute of limitations because of our holding herein that the Supreme

Court in *Houston* has decided the dispositive issue of the operative filing date for a state or federal pro se prisoner. *See Wilson v. Garcia*, 471 U.S. 261, 266–67, 105 S.Ct. 1938, 1942, 85 L.Ed.2d 254 (1985).

6. Johnson filed his action for violation of his civil rights pursuant to 42 U.S.C. § 1983. Because his allegations are against federal officials, his case was considered to have been filed under 28 U.S.C. § 1331 pursuant to *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Johnson amended his complaint accordingly.

7. Johnson asserts that, during his administrative detention, he was threatened verbally by defendants-appellees William Eiston, M. Hinton and

The magistrate judge ordered defendants-appellees to respond to Johnson's section 1331 claims in a special report. The special report, essentially denying fault in the treatment of Johnson during his detention, was filed with affidavits from several of the defendant-appellee prison officials and copies of Johnson's administrative claims and the responses. The magistrate judge informed both parties that the defendants-appellees' special report would be construed as a motion for summary judgment.

Johnson subsequently filed a motion to incorporate a tort claim, wherein he alleges that defendant-appellee D.J. Southerland lost Johnson's hobby craft materials valued at $80. Previously, Johnson had filed an administrative claim with the Bureau of Prisons as required under the Federal Tort Claims Act, 28 U.S.C. § 2675(a). The Bureau of Prisons denied the claim on November 16, 1989. Because, under 28 U.S.C. § 2401(b), Johnson had six months from the date of agency denial to file a complaint under the Federal Tort Claims Act, the magistrate judge reasoned that Johnson had until May 16, 1990, to file his action in district court. Since Johnson's motion to incorporate his tort claim was not received by the district court until May 18, 1990, the magistrate judge denied his motion as untimely.

■ The magistrate judge issued a report and recommendation and concluded that Johnson's complaint should be dismissed.[8] Johnson submitted objections to the magistrate judge's report and recommendation wherein he essentially disagreed with the magistrate judge's legal conclusions, but not the facts and issues presented.[9] The district court adopted the magistrate judge's report and recommendation, granted defendants-appellees' summary judgment motion, and dismissed Johnson's complaint with prejudice. Johnson appeals the dismissal of his case. The district court issued a certificate of probable cause and allowed Johnson to proceed *in forma pauperis.*

Johnson's appeal presents only one issue, the timeliness of his motion to incorporate his federal tort claim, that we will address in conjunction with a similar issue in the consolidated case.[10] He contends that the magistrate judge erroneously denied his motion as untimely. Although the district court did not receive his motion until May 18, 1991, Johnson asserts that it should have been considered timely filed when presented to prison officials on May 16, 1991, under the authority of *Houston.* The government admits that "[a]lthough Plaintiff did not raise the date of filing issue below in the district court, defen-

Brian Ross; that he was denied proper medical treatment for pain in his right hand and ringing in his ears; that he was given his medicine from the bare hands of a prison official; that for four days he was sent to a filthy, pest-infested disciplinary segregation cell with inadequate and dirty bed linens; that he was not served a meal by defendant-appellee Peggylene Moore on one occasion; that he was not provided administrative relief forms by defendants-appellees Eva Porter and Bruce Ballard and that his forms were not forwarded to administrative appeals in a timely manner; that his mail was delayed and censored by defendants-appellees Bruce Ballard and Billie Hodges; and that he was denied an interview with a news reporter.

8. The magistrate judge carefully reviewed the facts and the legal issues in this case. He determined that all of Johnson's claims were precluded by his failure to exhaust administrative remedies or to follow proper administrative procedures, mere negligence by the prison officials, and the qualified immunity defense. Specifically, he concluded that there was no evidence that Johnson intentionally was denied any claimed

rights. Because we are satisfied that the magistrate judge thoroughly and correctly analyzed Johnson's allegations, we will not address them further.

9. In his objections to the magistrate judge's report and recommendation, Johnson states that "Plaintiff feels that he has made his claims against the defendants sufficiently clear and should not be forced to rewrite his arguments to suit the whelms [sic] of a hostile magistrate." R2–39–4. Because Johnson did not file specific objections to *factual findings* by the magistrate judge, there was no requirement that the district court *de novo* review those findings. *Stokes v. Singletary,* 952 F.2d 1567, 1576 (11th Cir.1992); *LoConte v. Dugger,* 847 F.2d 745, 750 (11th Cir.), *cert. denied,* 488 U.S. 958, 109 S.Ct. 397, 102 L.Ed.2d 386 (1988); 28 U.S.C. § 636(b)(1)(B).

10. Johnson has raised additional issues on appeal that he did not present to the district court. Because these supplemental issues are not purely questions of law, the consideration of which would result in the miscarriage of justice, we decline to address them. *N.A.A.C.P. v. Hunt,* 891 F.2d 1555, 1563 (11th Cir.1990).

dants concede it is reasonable to presume Plaintiff presented his motion for mailing on May 16, 1990." Appellees' Brief at 8 n. 4.

## II. DISCUSSION

In *Houston v. Lack*, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988), the Supreme Court held that a notice of appeal by a pro se prisoner is *filed* when it is *delivered* to prison authorities for forwarding to the district court, rather than filing with the clerk of court. *Houston* involved a pro se state prisoner who gave a notice of appeal from the dismissal of his habeas corpus petition to prison authorities to mail to district court twenty-seven days after the adverse judgment was entered. The district court clerk stamped the notice filed thirty-one days after the district court judgment, or one day outside the thirty-day filing period of Federal Rule of Appellate Procedure 4(a)(1). The Supreme Court reversed the Sixth Circuit's dismissal of the appeal based on the untimely filing and found that the notice of appeal was filed when the petitioner relinquished it to the prison officials for mailing to the district court.

Central to the Court's holding in *Houston* is its concern for fairness in recognition of the "unique" disadvantages of an incarcerated pro se litigant for court filings. 487 U.S. at 270, 108 S.Ct. at 2382. Pro se prisoners are unable to file personally in the clerk's office, they cannot utilize a private express carrier, and they cannot place a telephone call to ascertain whether a document mailed for filing arrived. Not only do they lack these safeguards available to other litigants to ensure that their court filings are timely, but also they do not have counsel to monitor the filing process. Importantly, the pro se prisoner has no recourse other than to en-trust his court filings to prison authorities over whom he has no control. As defendants in a pro se prisoner's civil rights action, prison officials "may have every incentive to delay," and, even if he suspects delay by prison authorities, the pro se prisoner is helpless to investigate or prove such dilatoriness. 487 U.S. at 271, 108 S.Ct. at 2382. Additionally, the pro se prisoner may be hindered in his filing by slow postal service or a court clerk's failing to stamp a document filed on the date received.

> Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access—the prison authorities—and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.

487 U.S. at 271–72, 108 S.Ct. at 2382–83.

In establishing a brightline rule in *Houston*, the Court clearly sought to place pro se prisoners on equal footing with other litigants who are not impeded by the practical difficulties encountered by incarcerated petitioners in meeting filing requirements. Significantly, *Houston* does not create an exception for a pro se inmate to evade time requirements, but states an equitable, standardized method for measuring time restrictions so that requisite time limitations for filing do not preclude the incarcerated petitioner's equal access to the courts.[11] The Court also recognized that prison officials have procedures for recording the date and time that they receive inmates' papers for mailing and, therefore, are in a position to verify whether a prisoner delivered a docu-

---

**11.** Other circuits have concluded that *Houston* does not assist a pro se prisoner who *delivers* his court document for mailing to prison authorities *after* the statutory deadline has expired. *See Stajic v. I.N.S.*, 961 F.2d 403, 405 (2d Cir.1992) (per curiam) (declining to extend *Houston* to allow a pro se prisoner to file a petition after the statutory deadline in a deportation proceeding); *Smith v. Evans*, 853 F.2d 155, 162 (3d Cir.1988) (finding *Houston* unavailable to make a pro se federal prisoner's motion under Federal Rule of Civil Procedure 59(e) timely, when "[i]t is clear that when [the pro se prisoner] put his motion in the envelope (even before he gave it to prison authorities to mail) his motion was untimely."); *see also United States v. Locke*, 471 U.S. 84, 101, 105 S.Ct. 1785, 1796, 85 L.Ed.2d 64 (1985) ("Filing deadlines, like statutes of limitations, necessarily operate harshly and arbitrarily with respect to individuals who fall just on the other side of them, but if the concept of a filing deadline is to have any content, the deadline must be enforced.").

ment for mailing on a particular date. 487 U.S. at 275, 108 S.Ct. at 2384–85.

Realizing the hardship of a pro se federal prisoner in explaining the tardiness in the clerk's office receipt of his notice of appeal pursuant to Federal Rule of Criminal Procedure 37(a)(2) and that this situation should not be an impediment to his appeal, the Court previously concluded that "there is no reason on the basis of what this record discloses to doubt that petitioner's date at the top of the letter was an accurate one and that subsequent delays were not chargeable to him." *Fallen v. United States*, 378 U.S. 139, 143–44, 84 S.Ct. 1689, 1692, 12 L.Ed.2d 760 (1964). *Fallen* recognizes that, once a pro se inmate has deposited his document to be filed in the prison mailbox, "the jailer is in effect the clerk of the District Court." 378 U.S. at 144, 84 S.Ct. at 1692–93 (Stewart, J., concurring). Accordingly, *Houston* places the burden of proof for the pro se prisoner's date of delivering his document to be filed in court on the prison authorities, who have the ability to establish the correct date through their logs.[12] *United States v. Grana*, 864 F.2d 312, 316 (3d Cir.1989).

*Houston* and *Fallen* demonstrate that the Court will regard the distinct filing disabilities of state or federal pro se prisoners in both civil and criminal cases. In fashioning an equitable resolution to the pro se prisoner's filing dilemma, the Court was mindful that "the Rules are not, and were not intended to be, a rigid code to have an inflexible meaning irrespective of the circumstances." *Fallen*, 378 U.S. at 142, 84 S.Ct. at 1691. Moreover, *Houston* does not indicate that it should be limited to habeas corpus appeals. *Lewis v. Richmond City Police Dep't*, 947 F.2d 733, 736 (4th Cir.1991) (per curiam); *Hostler v. Groves*, 912 F.2d 1158, 1160 (9th Cir.1990), *cert. denied*, 498 U.S. 1120, 111 S.Ct. 1074, 112 L.Ed.2d 1180 (1991). Using its fairness rationale, other circuits have applied the *Houston* pro se prisoner filing rule extensively to state and federal inmates and have not limited *Houston* to its facts.[13]

In *Lewis*, the Fourth Circuit extended *Houston* to include Federal Rules of Civil Procedure 3 and 5(e) for a pro se state prisoner who filed a 42 U.S.C. § 1983 action. Strikingly similar to Garvey's case, the *Lewis* plaintiff-appellant had placed his complaint

12. In a pro se prisoner's section 1983 action, the Second Circuit found that the prison mail log showing when the inmate received correspondence from the district court was suggestive of prison officials' confiscating some of the prisoner's legal papers and indicated when his complaint was received for mailing to district court. *Ortiz v. Cornetta*, 867 F.2d 146, 148 (2d Cir. 1989).

13. *See, e.g., Vaughan v. Ricketts*, 950 F.2d 1464, 1466–68 (9th Cir.1991) (While prisoner's counsel had not withdrawn formally in a section 1983 action, the court decided that the prisoner practically was acting pro se in filing his appeal and applied *Houston*.); *Lewis*, 947 F.2d at 735–36 (Applying *Houston* in a pro se prisoner's section 1983 action caused the complaint to be filed timely within the state two-year statute of limitations.); *Lomax v. Armontrout*, 923 F.2d 574, 575 (8th Cir.) (Using the *Houston* rationale, the certificate of service on a pro se habeas petitioner's notice of appeal was used as the filing date to make the notice timely.), *cert. denied*, —— U.S. ——, 112 S.Ct. 60, 116 L.Ed.2d 36 (1991); *Hostler*, 912 F.2d at 1160–61 (*Houston* applies retroactively to pro se state prisoners' appeals in section 1983 actions.); *Burrell v. Newsome*, 883 F.2d 416, 417 (5th Cir.1989) (Under *Houston*, a pro se state prisoner's appeal in a section 1983 case was filed timely within the state two-year

statute of limitations.); *Dunn v. White*, 880 F.2d 1188, 1190 (10th Cir.1989) (per curiam) (*Houston* applied in a section 1983 case to filing of a state pro se prisoner's objections to a magistrate judge's report and recommendation, which the district court had found to be untimely.), *cert. denied*, 493 U.S. 1059, 110 S.Ct. 871, 107 L.Ed.2d 954 (1990); *Ortiz*, 867 F.2d at 148–49 (*Houston* was used to remedy the late filing of a complaint in a section 1983 case because the initial, timely filed complaint was returned to the pro se prisoner for corrections.); *Grana*, 864 F.2d at 315–16 (Applying *Houston*, any delay by prison officials in transmitting a notice of a judgment or final order to a federal pro se prisoner should be excluded from the computation time for taking an appeal.); *Smith v. White*, 857 F.2d 1042, 1043 (5th Cir.1988) (per curiam) (Even without a certificate of service, the signature of a pro se state prisoner on a timely notice of appeal complies with *Houston*.); *Thompson v. Montgomery*, 853 F.2d 287, 288 (5th Cir.1988) (per curiam) (Based on *Houston*, a civil rights action was remanded to district court for determination of whether any documentation supported the pro se prisoner's assertion that he timely placed his notice of appeal in the prison mailbox.); *Smith*, 853 F.2d at 161–62 (*Houston* is applicable to a motion to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e) for a pro se state prisoner in a section 1983 action.).

alleging excessive force at his arrest in the box designated for prisoner mail at his correctional facility in Virginia. Because his complaint was received by the district court outside the two-year, Virginia statute of limitations for personal injury actions, the court dismissed his complaint as untimely.

On appeal, the Fourth Circuit applied and extended *Houston* based on its conclusion that *Houston* established a fundamental "rule of equal treatment . . . to ensure that imprisoned litigants are not disadvantaged by delays which other litigants might readily overcome." *Lewis*, 947 F.2d at 735. The court found the same concerns that prompted *Houston* were present in *Lewis* in that the pro se prisoner was unable to monitor the mails or to rectify any delays in the mail, even if he had been aware of them. Additionally, such pro se prisoners must rely on prison authorities, who may be motivated to delay the filing and who control and log prisoners' outgoing mail. *See Hostler*, 912 F.2d at 1161 ("[P]rison authorities would have greater incentive to delay the processing of section 1983 suits, since such suits often target prison officials.").

The Fourth Circuit compared the wording of Federal Rules of Appellate Procedure 3(a) and 4(a)(1), implicated in *Houston*, with that of Federal Rule of Civil Procedure 5(e), and found them to be so similar that an identical interpretation was warranted.[14] As applied to pro se prisoners, the Supreme Court construed "filing" in the Appellate Rules to mean "directed to" the clerk of the district court, which occurred upon delivery to prison officials.[15] *Lewis*, 947 F.2d at 736. Accordingly, the Fourth Circuit determined that the

subject complaint was filed timely because it was *delivered* to prison officials within the two-year statute of limitations period.[16] We approve and adopt the Fourth Circuit's reasoning in *Lewis*, which is directly analogous to Garvey's case.

Regarding Johnson's case, we find that the same considerations of equal access to the courts involved in a state pro se prisoner's filing a section 1983 action apply to a federal pro se prisoner's filing a claim under the Federal Tort Claims Act. *See Hostler*, 912 F.2d at 1161 (The "broad language of *Houston* and its important policy concerns" indicate that it should be applied in contexts other than habeas cases when prisoners act pro se.). Further, the Court has emphasized "that the requirements of the rules of procedure should be liberally construed and that 'mere technicalities' should not stand in the way of consideration of a case on its merits." *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316, 108 S.Ct. 2405, 2408, 101 L.Ed.2d 285 (1988). In keeping with the Court's clear direction in *Houston* to provide pro se prisoners equal access to the courts with other litigants, we do not view the distinction between a federal pro se prisoner filing a federal tort claim to be "meaningfully distinguishable" from a state pro se prisoner filing a section 1983 action. *Grana*, 864 F.2d at 315. "Once a pro se litigant has done everything possible to bring his action, he should not be penalized by strict rules which might otherwise apply if he were represented by counsel." *Oritz v. Cornetta*, 867 F.2d 146, 148 (2d Cir.1989).

---

**14.** Federal Rule of Appellate Procedure 3(a) states that "An appeal . . . shall be taken by filing a notice of appeal with the clerk of the district court," and Federal Rule of Appellate Procedure 4(a)(1) says that a notice of appeal "shall be filed with the clerk of the district court." Federal Rule of Civil Procedure 5(e) states that "[t]he filing of papers with the court as required by these rules shall be made by filing them with the clerk of the court."

**15.** *Houston* is restricted to federal *court* filings; a notice of appeal given to prison authorities for delivery to a person or entity other than a federal court is not included in *"Houston's* mailbox rule." *Wilder v. Chairman of Cent. Classification Bd.*, 926 F.2d 367, 370–71 (4th Cir.) (Pro se

inmate addressed and sent his notice of appeal in a section 1983 case to a friend for subsequent forwarding to the district court.), *cert. denied*, ——— U.S. ———, 112 S.Ct. 109, 116 L.Ed.2d 78 (1991).

**16.** While the Fourth Circuit recognized that state statutes of limitation provide the period within which a section 1983, personal injury action can be filed, it concluded that state tolling provisions are not applicable. *Lewis*, 947 F.2d at 735 (citing *Wilson*, 471 U.S. at 280, 105 S.Ct. at 1949). The court based this differentiation on the historical distinction between diversity and federal question cases, such as a section 1983 case. *Id.* (citing *West v. Conrail*, 481 U.S. 35, 39, 107 S.Ct. 1538, 1541–42, 95 L.Ed.2d 32 (1987)).

Therefore, we now hold that this circuit extends *Houston* to pro se prisoners filing complaints in section 1983 cases and claims under the Federal Tort Claims Act. In these cases, *the date of filing shall be that of delivery to prison officials* of a complaint or other papers destined for district court for the purpose of ascertaining timeliness. "The teaching of *Houston* is that prison delay beyond the litigant's control cannot fairly be used in computing time for appeal." *Grana,* 864 F.2d at 316. Because the respective actions of Garvey and Johnson [17] would have been filed timely within the operative statutes of limitation had the dates of delivery to prison authorities been used, these cases must be reinstated for adjudication on the merits in district court.[18]

## III. CONCLUSION

The respective district courts in the Garvey and Johnson cases dismissed the pro se prisoners' actions because they were not filed timely. Under our extension of *Houston,* announced herein, the section 1983 complaint and the federal tort claim in the respective cases were filed timely when they were delivered by the incarcerated plaintiffs-appellants to prison authorities. Therefore, we RE-VERSE the dismissal of these actions by the respective district courts and REMAND for consideration of the pro se prisoners' claims.

---

**17.** In Johnson's case, the government also argues that, even if *Houston* is applicable, his federal tort claim cannot be incorporated because the motion did not name the United States as a defendant and was against defendant-appellee Southerland solely. Consequently, the government appears to argue lack of notice, since neither the United States nor the Attorney General was served with the motion within the limitations period. Because Johnson could amend his motion on remand to name the United States and the amendment would relate back to the date of the original motion, we find this argument to be meritless.

Under Federal Rule of Civil Procedure 15(c), an amendment of a pleading to name the proper party relates back to the date of the original pleading provided that (1) the claim asserted in the amended pleading arose out of the same transaction or occurrence set forth in the original pleading, and, (2) within 120 days of the filing of the original pleading, the party being named in the amended pleading (a) has received notice so that it will not be prejudiced in defending the action and (b) knew or should have known that it was the proper party but for the complainant's mistake. *See* Fed.R.Civ.P. 15(c)(2), (3). These requirements are met in this case.

First, an amendment on remand to name the United States as the proper defendant would state the identical cause of action as the federal tort claim already filed by Johnson, and thus would arise from the same transaction or occurrence. Second, the United States received timely notice such that it will not be prejudiced in defending the action. Johnson's motion to incorporate the tort claim was served on the same assistant United States attorney handling his *Bivens* action, and we previously have held that service on a responsible government officer is sufficient to impute the necessary notice to the United States. *Carr v. Veterans Admin.,* 522 F.2d 1355, 1357–58 (5th Cir.1975). The government's notice of the tort claim is underscored by the district court's order directing the government to respond to Johnson's motion. In the response to Johnson's motion, the assistant United States attorney states that he assumed that Johnson intended to name the United States as the proper defendant for his federal tort claim. Therefore, we are assured that the government knew that it was the proper party.

Because all of the criteria of Rule 15(c) are satisfied, a subsequent amendment naming the United States as the proper defendant would relate back to Johnson's federal tort claim, which we hold to be timely filed under *Houston. See* Fed.R.Civ.P. 15(c); *see also Hill v. United States Postal Serv.,* 961 F.2d 153 (11th Cir.1992) (holding that 1991 amendment to Rule 15(c) applies retroactively to eliminate a limitations defense for inconsequential pleading errors, such as naming the incorrect defendant). On remand, Johnson will be allowed to amend his federal tort claim to name the United States as the proper defendant.

**18.** Because the district court granted summary judgment, Johnson's case was dismissed on the legal, procedural basis that his motion to incorporate his tort claim was untimely. Accordingly, the district court has not considered his claim on the merits. *See* Fed.R.Civ.P. 56(c).