[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 10-13045
_____

D. C. Docket Nos. 4:09-cv-90064-CDL-GMF ; 4:05-cr-00021-CDL-GMF-1

MICHAEL ANTONIO NATSON,

Petitioner-Appellant,

versus

UNITED STATES OF AMERICA,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(September 4, 2012)

Before PRYOR and EDMONDSON, Circuit Judges, and BOWDRE,* District
Judge.


EDMONDSON, Circuit Judge:

---

*Honorable Karon O. Bowdre, United States District Judge for the Northern District of
Alabama, sitting by designation.

This case raises the question of the timely filing by a pro se prisoner of a section 2255 motion. Natson (serving a term of imprisonment without the possibility of parole) had until 4 September 2009 to file a timely motion. His motion -- which he signed and he dated 3 September 2009 -- was not received by the district court until 23 September 2009.

In Houston v. Lack, 108 S. Ct. 2379 (1988), the Supreme Court decided pro se prisoner notices of appeal to federal courts of appeals are to be considered filed at the moment the notice is delivered to prison authorities for forwarding to the courts.[1] No one in this case disputes this point of law: the law is certain. And in cases like Washington v. United States, 243 F.3d 1299 (11th Cir. 2001), this Court extended the Houston time-of-filing rule to pro se prisoner motions to vacate: 28 U.S.C. § 2255. No one in this case disputes this point of law either; the law is certain.

In the Houston opinion (Houston, by the way, involved a state prisoner), the Supreme Court wrote that prison authorities "have well-developed procedures for

---

[1]In Houston, the Supreme Court described the question that the Court was then deciding this way:

> The question we decide in this case is whether under Federal Rule of Appellate Procedure 4(a)(1) such notices are to be considered filed at the moment of delivery to prison authorities for forwarding or at some later point in time.

Id. at 2381 (emphasis added).

2

recording the date and time at which they receive papers for mailing." Houston, 108 S. Ct. at 2384-85. To us, this observation in the opinion -- part of the policy grounds suggested to explain the decision to allow delivery to prison officials as a filing -- is a statement of a fact making up the case then before the Houston court.[2] We do not read these quoted words to have been a legal order commanding that the Federal Executive Branch's Bureau of Prisons must create or maintain a specific kind of record: a contemporaneous mail-received-from-prisoner log for each and all federal places of incarceration.

We also do not understand Houston to have held (or said) that an inquiry about the time -- the specific date -- of delivery to prison officials is something other than a question of fact. Nor do we understand Houston to hold (or say) that no evidence would be competent to establish the fact of time of delivery, except a contemporaneous mail-received-from-prisoner log (or that such logs could never be disputed). Most important, we do not understand the Supreme Court in Houston to hold (or say) that factual representations, about timing, by convicted

---

[2]The opinions of the Supreme Court are not the United States Code. Every sentence in a Supreme Court opinion is not law. Only the holdings of Supreme Court decisions are law. And the reasoning of Supreme Court opinions is not the holding of the Supreme Court decision. "There is, of course, an important difference between the holding in a case and the reasoning that supports that holding." Crawford-El v. Britton, 118 S. Ct. 1584, 1590 (1998). For background, see Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 399-400 (1821) (Marshall, CJ.).

3

felons must be accepted -- as a matter of law -- as accurate, unless the Executive

Branch has one particular piece of evidence in hand to refute the prisoner's claim.[3]

The legal position we express today does not oppose our Circuit's

precedent. In Washington v. United States, a case relied on by Petitioner, our

Court faced a case in which the Government offered "no evidence to support a

conclusion that" the pertinent 2255 motion was delivered to prison authorities at a

date later than the prisoner-petitioner said and signed. Washington, 243 F.3d at

1301. Thus, Washington decided nothing -- could decide nothing, really -- about

what kinds of evidence could be lawfully used to determine a contest about when a

petition had, in fact, been delivered to prison authorities. In the Washington

opinion, we wrote (and we accept today) that the Government had the burden to

prove the date a petition was delivered was a date other than the date claimed by

the prisoner-petitioner; we then added that "[a]bsent evidence to the contrary in

the form of prison logs or other records, we will assume that" the prisoner's

---

[3]    There was no question of these issues presented in Houston.
    Per Federal Rule of Appellate Procedure 4(c)(1) and the Rules Governing Section 2254
Cases and 2255 Proceedings, we accept that the inmate's declaration (or notarized statement) is
competent evidence to support a judicial finding of timeliness. But we do not understand such
declarations, in themselves, to be entirely controlling -- as a matter of law -- for the question of
timeliness, when the substance of the declaration is challenged by other parties and other
evidence.

motion was delivered to prison officials the day the Petitioner says he signed it.[4]
Id. (emphasis added).

In the present case (unlike Washington), the Government did present, in district court, evidence to support a conclusion that the motion was delivered at a later date than Petitioner claims. The evidence was competent to establish untimely filing. Although the Government did not present a log of when the motion was delivered to prison authorities, the Government's evidence includes prison mailing records. Given the evidence -- including records, the district court found that, in fact, the motion was not delivered to prison officials when Petitioner represents that it was, but later. The petition was dismissed as untimely. We see no reversible error.

In support of its motion to dismiss, the Government presented a declaration from M.P., supervisor of the pertinent prison's mailroom. M.P. gave evidence of the prison's routine practice. M.P. declared (under penalty of perjury) that, pursuant to prison procedure, prison staff brought outgoing mail to the post office

---

[4]In Garvey v. Vaughn, 993 F.2d 776 (11th Cir. 1993), we extended the Houston rule to Federal Tort Claims Act cases and to section 1983 cases, that is, the complaints are deemed filed when delivered to prison officials by a pro se prisoner. Garvey decided nothing about what kinds of evidence are competent or are not competent to establish, in fact, when the complaints were delivered. Nothing in the appellate opinion indicates that the pertinent governments actually challenged the date that the prisoners contended were the dates that they delivered the complaints.

5

for mailing within 24 hours of receipt from a prisoner.  Because Natson's motion was delivered to the post office on 18 September, M.P. inferred that Natson must have given it to prison staff no earlier than 17 September.  Prison records also demonstrated that prison staff delivered certified mail from other prisoners to the post office nine times between 3 September and 18 September.

Based on the records and on the prison's mailing-within-24-hours routine practice, M.P. indicated that -- contrary to Natson's signature date -- Natson did not give his motion to prison staff to be mailed on 3 September.  Beyond Natson's own certification of time about his motion, Natson presented no evidence; for example, he did not offer evidence that the customs and practices in September 2009 for, or records of, forwarding prisoner mail were incorrectly described by the prison staff.  On this record, the motion to dismiss was granted.

We accept that, at the moment prison authorities received Petitioner's 2255 motion, the motion was filed; that principle is the bright line legal rule of Houston. But in the light of all the evidence, we see no clear error in the district court's factual determination that Natson delivered his motion to prison authorities sometime after 4 September 2009.  Thus, the district court properly dismissed

6

Natson's motion as untimely.

AFFIRMED.[5]

---

[5]To help avoid future disputes of this nature, we strongly encourage prison authorities to adopt procedures to make a record of the date a prisoner delivers outgoing mail to prison staff for mailing. Petitioner says such a procedure was adopted after September 2009 at his place of imprisonment. We understand, of course, that it is highly improbable any record can be made which could not contain an error or which could not be improperly manipulated by someone under some set of circumstances. So, mail logs are inherently just evidence of a date; to us, even a contemporaneous mail-received-from-prisoner log would not necessarily be, as a matter of law, conclusive proof in every case. (We appreciate that -- as a practical matter -- actual contests about the accuracy of dates set out in such a log might be uncommon.)

BOWDRE, District Judge sitting by designation, dissenting:

I respectfully dissent. The majority views the issue as a factual determination; I view it as a question of the appropriate legal standard required to rebut the presumption that the date a pro se prisoner signed his § 2255 motion is the date he delivered it for filing. Because the district court failed to follow the legal standard that requires proof of the actual date Natson delivered his motion to the prison officials when finding it untimely filed, the decision should be reversed.

The district court failed to adhere to the bright-line rule for determining the filing date for pro se prisoners expressed by the United States Supreme Court when it established the mailbox rule in *Houston v. Lack*, 487 U.S. 266 (1988). By affirming the district court's decision, the majority opinion accepts legally insufficient evidence based on an affidavit that provides information about general prison procedures and a log of when the prison official mailed other prisoners' filings, but that is totally devoid of proof of when Natson actually delivered his motion to the prison for mailing. In so doing, the majority appears to replace the *Houston* bright-line test with an uncertain one.

Instead of enforcing the burden placed on prison officials to prove the *actual date* of prisoner delivery to the prison for filing with evidence in the form

8

of "prison logs or other records" as required by *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001), the district court improperly shifted the burden to the pro se prisoner who, as the Supreme Court recognized,  is "unlikely to have any means of proving it" and for whom any evidence "will be hard to come by [while] confined to his cell." *See Houston*, 487 U.S. at 271, 276.  The majority perpetuates this error in noting that Natson failed to present evidence rebutting the M.P. declaration.  Such burden shifting turns *Houston* upside down.

Bright-line Rule Requires Record of Receipt of Prisoner Mail

The Supreme Court decision in *Houston* established the date the pro se prisoner delivers his document to the prison official for mailing as the "bright-line" mailbox rule for filing purposes. 487 U.S. at 275.  The evidentiary standard necessary to prove or disprove that date lies at the heart of this appeal.  Since *Houston*, procedural rules and case law have fleshed out in part how a pro se prisoner can establish the date of delivery.  *See* Fed. R. App. P. 4(c)(1); Rules Governing § 2254 Cases, Rule 3(d), 28 U.S.C.A. foll. § 2254; *Washington*, 243 F.3d at 1301.

In its "bright-line" focus on the date of delivery to prison officials as the date of filing for pro se prisoners, the Supreme Court noted that prison authorities

9

have well-developed procedures for *recording the date and time at which they receive papers for mailing* and . . . can readily dispute a prisoner's assertions that he delivered the paper on a different date. *Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the* pro se *prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one.*

*Houston,* 487 U.S. at 275 (emphasis added).

The expectation that prisons would have "well-developed procedures" with mail logs for prisoner mail expressed in *Houston* in 1988 was not a new idea for the Supreme Court and was not limited to its evaluation of the state prison system. Indeed, in 1964 when the Supreme Court made "the jailer . . . in effect the clerk of the District Court," Justice Stewart noted in his concurring opinion that government counsel had advised at oral argument "that procedures have now been inaugurated at the *federal* prisons to make certain that the exact time of receipt will be marked on all papers that are filed with the authorities for mailing." *Fallen v. United States*, 378 U.S. 139, 144–45 (1964) (Stewart, J., concurring) (emphasis added).[1]

---

[1]  *Fallen* involved a federal prisoner's timely-dated but late received letter requesting an appeal.  The letter bore the date two days before the expiration of the time to file an appeal, but it was received by the clerk of court four days late.  The envelope bore no postmark "nor any indication of the time at which the envelope came into the hands of the prison officials."  378 U.S. at 144. The Court found that the prisoner "had done all that could reasonably be expected to get the letter to its destination" on time, refused to "read the Rules so rigidly as to bar a

This Court in *Washington* recognized the presumption of the mailbox rule that the prisoner delivered the motion to prison authorities on the date he signed it— "[a]bsent evidence to the contrary in the form of prison logs or other records." 243 F.3d at 1301. The Court placed the burden squarely on the "prison authorities to *prove the date a prisoner delivered his documents* to be mailed." *Id.* (citing *Garvey v. Vaughn*, 993 F.2d 776, 781 (11th Cir. 1993) (emphasis added)).

Although the Court did not elaborate on precisely what "prison logs or other records" can refute the presumption afforded the pro se prisoner's signature date, the Supreme Court's reasoning concerning the purpose of the mailbox rule, as well as its historical development within this Circuit, demonstrate that the proffered evidence should directly address the point at issue:  when did the pro se prisoner actually deliver the paper to the prison authorities for filing?  The *Garvey* decision of this Circuit recognized that "*Houston* places the burden of proof for the pro se prisoner's *date of delivering* his document to be filed in court on the prison authorities, who have the ability *to establish the correct date through their logs*." 993 F.2d at 781 (emphasis added) (footnote omitted).

The effectiveness of the bright-line mailbox rule requires prisons to use procedures by which they log or otherwise record receipt from pro se prisoners of

---

determination of his appeal on the merits," and reversed the dismissal of the appeal.  *Id.*

11

outgoing mail.  The critical date hinges on that receipt from the prisoner—not the date the prison delivers the mail to the post office, but the date the prisoner delivers the mail to the prison for filing.

Prison authorities bear the burden to prove the date the prisoner delivered the document to them.  Such proof should be of the kind the Supreme Court contemplated when it discussed the reasons for creating the mailbox rule: contemporaneous logs or records of the date the prisoner entrusted his papers to the prison to be mailed.  The logical record or log to establish the date the prisoner delivered his document would be a mail receipt log or other record documenting the actual delivery date.  Evidence based only on general procedures, speculation, and inferences eviscerates the bright-line rule the Supreme Court intended the mailbox rule to be. *See Houston*, 487 U.S. at 275 ("Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the *pro se* prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one."); *see also Garvey*, 993 F.2d at 780 (explaining that *Houston* establishes a bright-line rule that "states an equitable, standardized method for measuring time restrictions so that requisite time limitations for filing do not preclude the incarcerated petitioner's equal access to the courts") (footnote omitted).

12

The government in its brief admitted that it had "no records showing the date of receipt of Natson's mailing." Without such records to verify the date Natson actually delivered his motion for mailing, the prison officials failed to meet their burden to overcome the presumption that the date he signed it was the date he delivered it for filing purposes. *See Washington*, 243 F.3d at 1301. The evidence proffered in this case falls short of the legal standard required to establish the date Natson entrusted his motion to the prison officials for filing.

A declaration that relies on the date of the certified mail stamp affixed by the Post Office, the *outgoing* mail log, and general prison procedures to infer that Natson's motion "*would have been* provided to BOP staff . . . no earlier than September 17, 2009"[2] fails to meet the legal standard to establish when Natson actually delivered his motion to prison officials. Accepting such backward

---

[2] M.P.'s declaration was equivocal at best, full of speculation and inferences. After stating that the certified mail log showed that Natson's parcel "was taken to the United States Post Office for mailing on September 18, 2009" and reciting the standard procedure for posting mail within twenty-four hours of receipt, he then concluded:

> Therefore, the certified mail which was posted by Petitioner on September 18, 2009, *would have been provided* to the BOP staff (by Petitioner's dropping it in the inmate outgoing mail depository) no earlier than September 17, 2009. Had Petitioner provided his mail to BOP staff on September 3, 2009, as the date he provided on his petition would suggest, it *would have* gone out on September 4, 2009.

(emphasis added).

13

reasoning as legally sufficient proof of the date the pro se prisoner delivered his motion creates uncertainty and perpetuates the opportunity for manipulation and delay by prison officials—the very concerns that led the Supreme Court to adopt the mailbox rule in the first place. *See Garvey*, 993 F.2d at 780 ("As defendants in a pro se prisoner's civil rights action, prison officials 'may have every incentive to delay,' and even if he suspects delay by prison authorities, the pro se prisoner is helpless to investigate or prove such dilatoriness." (quoting *Houston*, 487 U.S. at 271)); *see also Sanders v. United States*, 113 F.3d 184, 187 (11th Cir. 1997) (recognizing the ability of prison officials to block a pro se prisoner's access to court by manipulating mail as "one of the main concerns" addressed in *Houston*). Even without any bad intent, prisoner mail can get misplaced or dropped, or any number of events beyond the control or knowledge of the prisoner can result in the mail not being timely posted by the prison officials after a prisoner relinquishes control over the document.

The beauty of the mailbox rule envisioned by the Supreme Court lies in its straightforward application as it has evolved: in his notice of appeal or § 2255 petition, the pro se prisoner certifies under penalty of perjury the date the document was placed in the prison mailing system. *See* Fed. R. App. P. 4(c)(1); Rules Governing § 2254 Cases, Rule (3)(d), 28 U.S.C.A. foll. § 2254. That date

14

becomes the presumptive date of filing *unless* the prison officials can prove the prisoner actually delivered it on some other date by producing a log or other record reflecting the date of actual delivery.  The majority opinion converts this simple bright-line test into hazy shades of gray by accepting as legally sufficient evidence something less than a record of the actual date Natson delivered his motion into the custody of the prison.

## Burden of Proof Does Not Shift to Pro Se Prisoner in His Cell

The district court and the majority opinion erroneously expected Natson to rebut the evidence presented in M.P.'s declaration.  The majority opinion hints that the burden shifts to the prisoner without citing any authority.  Expecting an incarcerated prisoner to be able to offer evidence refuting a prison official's recitation of customs and practices for posting prisoner mail creates an unprecedented and virtually impossible burden in stark contrast to the rationale expressed by the Supreme Court when it adopted the mailbox rule.

The Supreme Court recognized the unique situation of pro se prisoner litigants in *Houston*. Unlike other litigants, they cannot personally deliver their legal documents to the court clerk or even to the Postal Service; they cannot follow through on their delivery, or take any precautions to ensure the court receives them. 487 U.S. at 270–71.

15

> Worse, the *pro se* prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the *pro se* prisoner delivers his notice to the prison authorities, he can never be *sure* that it will ultimately get stamped "filed" on time. And if there is a delay the prisoner suspects is attributable to the prison authorities, <u>he is unlikely to have any means of proving it</u>, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk's failure to stamp the notice on the date received. Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access -- the prison authorities -- <u>and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice</u>.

*Houston*, 487 U.S. at 271–72 (italics in original; underline added).

The Supreme Court's recognition of the pro se prisoner's lack of control and of his inability to prove the reason for any delay demonstrates that shifting the burden to the prisoner to rebut the prison's proffered evidence contravenes the intent of *Houston*.

Of course, if the majority adhered to the bright-line rule of *Houston*, it would have no reason to suggest that a pro se prisoner needs to refute an affidavit

16

based on general prison procedures, a log of *outgoing* mail, and inferences.  As the

Supreme Court noted:

> The prison will be the only party with access to at
> least some of the evidence needed to resolve such
> questions-one of the vices the general rule is meant
> to avoid-and evidence on any of these issues will be
> hard to come by for the prisoner confined to his cell,
> who can usually only guess whether the prison
> authorities, the Postal Service, or the court clerk is
> to blame for any delay.

*Houston*, 487 U.S. at 276.

Shifting the burden to the pro se prisoner to rebut evidence that does not

even meet the legal standard created by the bright-line mailbox rule stands the

rationale of *Houston* on its head.

Because the district court did not require proof in the form of a log or other

record of the actual date Natson delivered his motion to the prison for mailing and

improperly shifted the burden back to him, it deviated from the bright-line test

established in *Houston*.  I would reverse.

17