BOWDRE, District Judge
sitting by designation, dissenting:
I respectfully dissent. The majority views the issue as a factual determination; *7 I view it as a question of the appropriate legal standard required to rebut the presumption that the date a pro se prisoner signed his § 2255 motion is the date he delivered it for filing. Because the district court failed to follow the legal standard that requires proof of the actual date Nat-son delivered his motion to the prison officials when finding it untimely filed, the decision should be reversed.
The district court failed to adhere to the bright-line rule for determining the filing date for pro se prisoners expressed by the United States Supreme Court when it established the mailbox rule in Houston v. Lack, 487 U.S. 266, 108 S.Ct. 2379, 101 L.Ed.2d 245 (1988). By affirming the district court’s decision, the majority opinion accepts legally insufficient evidence based on an affidavit that provides information about general prison procedures and a log of when the prison official mailed other prisoners’ filings, but that is totally devoid of proof of when Natson actually delivered his motion to the prison for mailing. In so doing, the majority appears to replace the Houston bright-line test with an uncertain one.
Instead of enforcing the burden placed on prison officials to prove the actual date of prisoner delivery to the prison for filing with evidence in the form of “prison logs or other records” as required by Washington v. United States, 243 F.3d 1299, 1301 (11th Cir.2001), the district court improperly shifted the burden to the pro se prisoner who, as the Supreme Court recognized, is “unlikely to have any means of proving it” and for whom any evidence “will be hard to come by [while] confined to his cell.” See Houston, 487 U.S. at 271, 276, 108 S.Ct. 2379. The majority perpetuates this error in noting that Natson failed to present evidence rebutting the M.P. declaration. Such burden shifting turns Houston upside down.

Bright-line Rule Requires Record of Receipt of Prisoner Mail

The Supreme Court decision in Houston established the date the pro se prisoner delivers his document to the prison official for mailing as the “brightline” mailbox rule for filing purposes. 487 U.S. at 275, 108 S.Ct. 2379. The evidentiary standard necessary to prove or disprove that date lies at the heart of this appeal. Since Houston, procedural rules and case law have fleshed out in part how a pro se prisoner can establish the date of delivery. See Fed. R.App. P. 4(c)(1); Rules Governing § 2254 Cases, Rule 3(d), 28 U.S.C.A. foil. § 2254; Washington, 243 F.3d at 1301.
In its “bright-line” focus on the date of delivery to prison officials as the date of filing for pro se prisoners, the Supreme Court noted that prison authorities
have well-developed procedures for recording the date and time at which they receive papers for mailing and ... can readily dispute a prisoner’s assertions that he delivered the paper on a different date. Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the pro se prisoner delivers the notice to prison authorities for mailing is a brightline rule, not an uncertain one.
Houston, 487 U.S. at 275, 108 S.Ct. 2379 (emphasis added).
The expectation that prisons would have “well-developed procedures” with mail logs for prisoner mail expressed in Houston in 1988 was not a new idea for the Supreme Court and was not limited to its evaluation of the state prison system. Indeed, in 1964 when the Supreme Court made “the jailer ... in effect the clerk of the District Court,” Justice Stewart noted in his concurring opinion that government counsel had advised at oral argument “that proce *8 dures have now been inaugurated at the federal prisons to make certain that the exact time of receipt will be marked on all papers that are filed with the authorities for mailing.” Fallen v. United States, 378 U.S. 139, 144-45, 84 S.Ct. 1689, 12 L.Ed.2d 760 (1964) (Stewart, J., concurring) (emphasis added).[1]
This Court in Washington recognized the presumption of the mailbox rule that the prisoner delivered the motion to prison authorities on the date he signed it “[alb-sent evidence to the contrary in the form of prison logs or other records.” 243 F.3d at 1301. The Court placed the burden squarely on the “prison authorities to prove the date a prisoner delivered his documents to be mailed.” Id. (citing Garvey v. Vaughn, 993 F.2d 776, 781 (11th Cir.1993) (emphasis added)).
Although the Court did not elaborate on precisely what “prison logs or other records” can refute the presumption afforded the pro se prisoner’s signature date, the Supreme Court’s reasoning concerning the purpose of the mailbox rule, as well as its historical development within this Circuit, demonstrate that the proffered evidence should directly address the point at issue: when did the pro se prisoner actually deliver the paper to the prison authorities for filing? The Garvey decision of this Circuit recognized that “Houston places the burden of proof for the pro se prisoner’s date of delivering his document to be filed in court on the prison authorities, who have the ability to establish the correct date through their logs.” 993 F.2d at 781 (emphasis added) (footnote omitted).
The effectiveness of the bright-line mailbox rule requires prisons to use procedures by which they log or otherwise record receipt from pro se prisoners of outgoing mail. The critical date hinges on that receipt from the prisoner-not the date the prison delivers the mail to the post office, but the date the prisoner delivers the mail to the prison for filing.
Prison authorities bear the burden to prove the date the prisoner delivered the document to them. Such proof should be of the kind the Supreme Court contemplated when it discussed the reasons for creating the mailbox rule: contemporaneous logs or records of the date the prisoner entrusted his papers to the prison to be mailed. The logical record or log to establish the date the prisoner delivered his document would be a mail receipt log or other record documenting the actual delivery date. Evidence based only on general procedures, speculation, and inferences eviscerates the bright-line rule the Supreme Court intended the mailbox rule to be. See Houston, 487 U.S. at 275, 108 S.Ct. 2379 (“Because reference to prison mail logs will generally be a straightforward inquiry, making filing turn on the date the pro se prisoner delivers the notice to prison authorities for mailing is a bright-line rule, not an uncertain one.”); see also Garvey, 993 F.2d at 780 (explaining that Houston establishes a bright-line rule that “states an equitable, standardized method for measuring time restrictions so that requisite time limitations for filing do not preclude the incarcerated petitioner’s *9 equal access to the courts”) (footnote omitted).
The government in its brief admitted that it had “no records showing the date of receipt of Natson’s mailing.” Without such records to verify the date Natson actually delivered his motion for mailing, the prison officials failed to meet their burden to overcome the presumption that the date he signed it was the date he delivered it for filing purposes. See Washington, 243 F.3d at 1301. The evidence proffered in this case falls short of the legal standard required to establish the date Natson entrusted his motion to the prison officials for filing.
A declaration that relies on the date of the certified mail stamp affixed by the Post Office, the outgoing mail log, and general prison procedures to infer that Natson’s motion “would have been provided to BOP staff ... no earlier than September 17, 2009”[2] fails to meet the legal standard to establish when Natson actually delivered his motion to prison officials. Accepting such backward reasoning as legally sufficient proof of the date the pro se prisoner delivered his motion creates uncertainty and perpetuates the opportunity for manipulation and delay by prison officials — the very concerns that led the Supreme Court to adopt the mailbox rule in the first place. See Garvey, 993 F.2d at 780 (“As defendants in a pro se prisoner’s civil rights action, prison officials ‘may have every incentive to delay,’ and even if he suspects delay by prison authorities, the pro se prisoner is helpless to investigate or prove such dilatoriness.” (quoting Houston, 487 U.S. at 271, 108 S.Ct. 2379)); see also Sanders v. United States, 113 F.3d 184, 187 (11th Cir.1997) (recognizing the ability of prison officials to block a pro se prisoner’s access to court by manipulating mail as “one of the main concerns” addressed in Houston). Even without any bad intent, prisoner mail can get misplaced or dropped, or any number of events beyond the control or knowledge of the prisoner can result in the mail not being timely posted by the prison officials after a prisoner relinquishes control over the document.
The beauty of the mailbox rule envisioned by the Supreme Court lies in its straightforward application as it has evolved: in his notice of appeal or § 2255 petition, the pro se prisoner certifies under penalty of perjury the date the document was placed in the prison mailing system. See Fed. R.App. P. 4(c)(1); Rules Governing § 2254 Cases, Rule (3)(d), 28 U.S.C.A. foil. § 2254. That date becomes the presumptive date of filing unless the prison officials can prove the prisoner actually delivered it on some other date by producing a log or other record reflecting the date of actual delivery. The majority opinion converts this simple bright-line test into hazy shades of gray by accepting as legally sufficient evidence something less than a record of the actual date Nat-son delivered his motion into the custody of the prison.

*10
Burden of Proof Does Not Shift to Pro Se Prisoner in His Cell

The district court and the majority opinion erroneously expected Natson to rebut the evidence presented in M.P.’s declaration. The majority opinion hints that the burden shifts to the prisoner without citing any authority. Expecting an incarcerated prisoner to be able to offer evidence refuting a prison official’s recitation of customs and practices for posting prisoner mail creates an unprecedented and virtually impossible burden in stark contrast to the rationale expressed by the Supreme Court when it adopted the mailbox rule.
The Supreme Court recognized the unique situation of pro se prisoner litigants in Houston. Unlike other litigants, they cannot personally deliver their legal documents to the court clerk or even to the Postal Service; they cannot follow through on their delivery, or take any precautions to ensure the court receives them. 487 U.S. at 270-71, 108 S.Ct. 2379.
Worse, the pro se prisoner has no choice but to entrust the forwarding of his notice of appeal to prison authorities whom he cannot control or supervise and who may have every incentive to delay. No matter how far in advance the pro se prisoner delivers his notice to the prison authorities, he can never be sure that it will ultimately get stamped “filed” on time. And if there is a delay the prisoner suspects is attributable to the prison authorities, he is unlikely to have any means of proving it, for his confinement prevents him from monitoring the process sufficiently to distinguish delay on the part of prison authorities from slow mail service or the court clerk’s failure to stamp the notice on the date received. Unskilled in law, unaided by counsel, and unable to leave the prison, his control over the processing of his notice necessarily ceases as soon as he hands it over to the only public officials to whom he has access — the prison authorities — and the only information he will likely have is the date he delivered the notice to those prison authorities and the date ultimately stamped on his notice.
Houston, 487 U.S. at 271-72, 108 S.Ct. 2379 (italics in original; underline added).
The Supreme Court’s recognition of the pro se prisoner’s lack of control and of his inability to prove the reason for any delay demonstrates that shifting the burden to the prisoner to rebut the prison’s proffered evidence contravenes the intent of Houston.
Of course, if the majority adhered to the bright-line rule of Houston, it would have no reason to suggest that a pro se prisoner needs to refute an affidavit based on general prison procedures, a log of outgoing mail, and inferences. As the Supreme Court noted:
The prison will be the only party with access to at least some of the evidence needed to resolve such questions — one of the vices the general rule is meant to avoid — and evidence on any of these issues will be hard to come by for the prisoner confined to his cell, who can usually only guess whether the prison authorities, the Postal Service, or the court clerk is to blame for any delay.
Houston, 487 U.S. at 276, 108 S.Ct. 2379.
Shifting the burden to the pro se prisoner to rebut evidence that does not even meet the legal standard created by the bright-line mailbox rule stands the rationale of Houston on its head.
Because the district court did not require proof in the form of a log or other record of the actual date Natson delivered his motion to the prison for mailing and improperly shifted the burden back to him, *11 it deviated from the bright-line test established in Houston. I would reverse.

. Fallen involved a federal prisoner’s timely-dated but late received letter requesting an appeal. The letter bore the date two days before the expiration of the time to file an appeal, but it was received by the clerk of court four days late. The envelope bore no postmark "nor any indication of the time at which the envelope came into the hands of the prison officials.” 378 U.S. at 144, 84 S.Ct. 1689. The Court found that the prisoner "had done all that could reasonably be expected to get the letter to its destination” on time, refused to "read the Rules so rigidly as to bar a determination of his appeal on the merits,” and reversed the dismissal of the appeal. Id.

. M.P.’s declaration was equivocal at best, full of speculation and inferences. After stating that the certified mail log showed that Nat-son’s parcel "was taken to the United States Post Office for mailing on September 18, 2009” and reciting the standard procedure for posting mail within twenty-four hours of receipt, he then concluded:
Therefore, the certified mail which was posted by Petitioner on September 18, 2009, would have been provided to the BOP staff (by Petitioner's dropping it in the inmate outgoing mail depository) no earlier than September 17, 2009. Had Petitioner provided his mail to BOP staff on September 3, 2009, as the date he provided on his petition would suggest, it would have gone out on September 4, 2009.
(emphasis added).