[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10448
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-23452-CMA


KEVIN GERALD FORDE,

                                        Plaintiff - Appellant

versus

MIAMI FEDERAL DEPARTMENT OF
CORRECTIONS,
JOHN DOE I,
A.M. Shift Lieutenant,
JOHN DOE II,
A.M. Correctional Officer,
JOHN DOE III,
RICARDO VARELA,
Registered Nurse,

                                        Defendants - Appellees,

TIMOTHY PETERS,
Correctional Officer,

                                        Defendant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(April 11, 2018)

Before MARTIN, JORDAN and JILL PRYOR, Circuit Judges.

PER CURIAM:

On October 30, 2011, Kevin Forde, a prisoner at the Federal Detention Center in Miami, Florida, suffered multiple seizures which resulted in head trauma. Mr. Forde subsequently filed a *pro se* 42 U.S.C. § 1983 action against FDC Miami, an FDC Miami registered nurse, and the correctional officer on duty during his seizures, alleging deliberate indifference to his serious medical need in violation of the Eighth Amendment.

The district court dismissed Mr. Forde's claim against the nurse based on absolute immunity, and against the correctional officer based on failure to exhaust administrative remedies, as required by the Prison Litigation Reform Act of 1995, 42 U.S.C. § 1997e(a).  Mr. Forde, again proceeding *pro se*, appeals the district court's dismissal order.

**I**

The following facts come from Mr. Forde's complaint and are assumed to be true.

2

On October 27, 2011, Mr. Forde was arrested and taken to FDC Miami. During his initial medical screening on October 28, 2011, he informed the intake nurse, Ricardo Varela, that he suffered from seizures and took an anti-seizure medication called Tegretol.  Mr. Varela prescribed CarBaMazepine, the generic form of Tegretol, for Mr. Forde.  Because he did not recognize the name of the drug prescribed by Mr. Varela, Mr. Forde refused to take it.

On October 30, 2011, Mr. Forde experienced multiple seizures.  The first seizure caused Mr. Forde to fall from his bunk bed, causing serious head injuries.  When Antonio Cruz, Mr. Forde's cellmate, pressed the "panic button" at 11:17 p.m., Ramon Salazar, the housing unit correctional officer on duty, responded.  Officer Salazar told Mr. Cruz to place Mr. Forde back on his bed and to clean his blood from the floor.  When Mr. Forde had a second seizure, Mr. Cruz again pressed the panic button.  When Officer Salazar responded, he told Mr. Cruz to hold Mr. Forde down until his seizure stopped.  It was not until Mr. Forde suffered a third seizure, at 1:20 a.m., that Officer Salazar called an ambulance.

Mr. Forde, proceeding *pro se*, filed a civil rights claim in September of 2013 pursuant to 42 U.S.C. § 1983 against Mr. Varela and Officer Salazar.  In his complaint, Mr. Forde alleged that Mr. Varela failed to prescribe him the proper anti-seizure medication, causing him to suffer multiple seizures resulting in head

3

trauma. Mr. Forde alleged that Officer Salazar failed to properly respond to his seizures, constituting deliberate indifference. The district court construed Mr. Forde's claim as a *Bivens* claim, because § 1983 claims apply to persons acting under color of state law, rather than to federal employees. *See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388, 399 (1971).

In February of 2016, Mr. Varela filed a Rule 12(b)(1) motion to dismiss, raising the affirmative defense of absolute immunity. In May of 2016, Officer Salazar filed a Rule 12(b)(1) motion to dismiss on the ground that Mr. Forde had failed to exhaust his administrative remedies under § 1997e(a). In August of 2016, the district court dismissed the claim against Mr. Varela because absolute immunity protected him from suit under the Public Health Service Act, *see* 42 U.S.C. § 233(a), and dismissed the claim against Officer Salazar because Mr. Forde failed to exhaust his administrative remedies before filing his complaint. The district court explained in its dismissal order that even if Mr. Forde was unable to file a grievance within the required time under Bureau of Prisons procedures, he still should have filed an out-of-time grievance when he learned of Officer Salazar's alleged misconduct 21 months later.

Mr. Forde appeals only the dismissal of the claim against Officer Salazar. Based on our review of the law, the record, and the briefs on appeal, we reverse and remand for further proceedings.

## II

We review *de novo* a district court's interpretation and application of § 1997e(a)'s exhaustion requirement. *See Alexander v. Hawk*, 159 F.3d 1321, 1323 (11th Cir. 1998).

## III

Mr. Forde concedes that he did not exhaust his BOP administrative remedies prior to filing suit, but argues that an exception to the exhaustion requirement applies: the administrative remedies were not "available" to him. In his response to the motion to dismiss, Mr. Forde asserted that he was unaware of Officer Salazar's misconduct towards him until 21 months later, when he and his former cellmate, Mr. Cruz, crossed paths while in transit to an institution in Petersburg, Virginia, and Mr. Cruz told Mr. Forde of the events that transpired in October of 2011. Thus, Mr. Forde contends, it was impossible for him to comply with the BOP's requirement that he file a "BP-9" complaint with the warden within 20 days of the alleged incident. *See* 28 C.F.R. § 542.14(a). Furthermore, Mr. Forde claimed he had not received a BOP Handbook, which would have explained the grievance procedures. Mr. Forde cited *Goebert v. Lee County*, 510 F.3d 1312 (11th Cir. 2007), for the idea that the grievance procedures were unknown to him. *See id.* at 1323–24.

Officer Salazar, on the other hand, argues that the district court properly

5

dismissed the claim against him because Mr. Forde did not file any administrative grievance prior to filing his complaint. He also contends that Mr. Forde's explanations for not filing a grievance are insufficient grounds for waiving the PLRA's exhaustion requirement. He maintains that the district court had no discretion to waive the exhaustion requirement prior to filing suit because that requirement is mandatory.

According to Officer Salazar, *Goebert* does not help Mr. Forde. First, the inmate in *Goebert* received no inmate handbook which would have explained the administrative grievance procedures of the prison. Second, Ms. Goebert was provided a complaint form which she appropriately completed. Based on the urgent medical need Ms. Goebert faced, we ruled she had exhausted her administrative remedies because she did not know, and could not reasonably have known, about the proper grievance procedure under the circumstances. In contrast, Officer Salazar says, Mr. Forde only pursued his administrative remedies after the district court dismissed his case, whereas Ms. Goebert filed a complaint detailing the facts of her grievance, her efforts to get help, and her desired remedy. Third, Officer Salazar argues that *Goebert* should not apply here because Mr. Forde never claimed he did not know of the BOP grievance procedures, whereas Ms. Goebert "had not received a copy of the jail handbook that would have included the administrative procedures."

6

## IV

A prisoner like Mr. Forde must exhaust all available administrative remedies before bringing a claim against a prison official. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). The purpose of § 1997e(a) was "to reduce the quantity and improve the quality of prisoner suits." *Porter v. Nussle*, 544 U.S. 516, 524 (2002).

Prior to the 1996 amendment of § 1997e(a), courts had discretion to require inmates to exhaust all administrative remedies prior to filing suit, but only if those remedies were "plain, speedy, and effective." *See* 42 U.S.C. § 1997e(a) (1994 ed.). Today, however, the exhaustion of administrative remedies is—when raised—a precondition to filing suit which cannot be waived. *See Booth v. Churner*, 532 U.S. 731, 739 (2001) (explaining that "the amendments eliminated both the discretion to dispense with administrative exhaustion and the condition that the remedy be 'plain speedy, and effective' before exhaustion could be required"). *See also Alexander*, 159 F.3d at 1325–26 (noting that because Congress mandated exhaustion, courts no longer have discretion to waive the exhaustion requirement). Failure to exhaust administrative remedies under the PLRA is an affirmative defense raised by the defendant, meaning that inmates need not "specially plead or

demonstrate exhaustion in their complaints." *Jones v. Brock*, 549 U.S. 199, 216 (2007).

The rules governing the grievance procedures and exhaustion requirements at a federal detention center are established in the BOP's Administrative Remedy Program. *See* 28 C.F.R. §§ 542.13–542.15. The Administrative Remedy Program requires a prisoner to first file a grievance (a BP-9) with the warden of the prison "within twenty (20) calendar days from the date on which the basis for the incident" occurred. *See* Federal Bureau of Prisons Inmate Admission & Orientation Handbook at 41 (2014); 28 C.F.R. § 542.14(a). If the inmate is dissatisfied with the warden's response, he may then appeal (a BP-10) to the Regional Director within 20 calendar days from the date of that response. *See* BOP Handbook at 41; 28 C.F.R. § 542.15(a). Finally, if the inmate is dissatisfied with the Regional Director's response, he may appeal (a BP-11) to the General Counsel within 30 days of that response. *See id.*

Complete exhaustion of BOP administrative remedies may take over five months after the date of initial filing with the warden. *See* BOP Handbook at 41. The response by the warden to the prisoner's initial grievance (BP-9) may take as long as 40 days, the response by the regional director to the first appeal (BP-10) may take as long as 60 days, and the response by the General Counsel to the second appeal (BP-11) may also take as long as 60 days, for a total of 160 days.

Although the PLRA makes clear that exhaustion of administrative remedies is mandatory, "that edict contains one significant qualifier: the remedies must indeed be 'available' to the prisoner." *Ross v. Blake*, 136 S. Ct. 1850, 1856, 1858 (2016). The Supreme Court has outlined three circumstances under which administrative remedies could be "unavailable," meaning that an inmate would not be required to exhaust them. *See id.* at 1858. First, if, despite attempts by prison inmates to file grievances, "officers [are] unable or consistently unwilling to provide any relief to aggrieved inmates," that procedure is a "dead end" and incapable of providing relief. *Id.* Second, an administrative remedy is unavailable if it is so opaque that it is unknown or unknowable to the inmates. *See id.* at 1859–60; *Goebert*, 510 F.3d at 1323–1324. Third, where prison employees prevent inmates from taking advantage of grievance procedures through "machination, misrepresentation, or intimidation," those procedures are unavailable as well. *See Ross*, 136 S. Ct. at 1860.

It is clear from the record and the briefs that Mr. Forde did not exhaust his BOP administrative remedies prior to filing suit against Officer Salazar. But, when Officer Salazar moved to dismiss for failure to exhaust, he only pointed the district court to the BOP's general three-step grievance procedure. Nowhere in his motion to dismiss did he direct the district court or Mr. Forde to a federal regulation or a BOP Handbook Provision allowing or providing instruction on out-of-time

grievances, or saying that an inmate has to file an out-of-time grievance, under certain circumstances, in order to exhaust his administrative remedies.

The district court relied on *Guarino v. Hernandez*, No. 07-22498, 2008 WL 4540417 (S.D. Fla. Oct. 9, 2008), in concluding that Mr. Forde needed to file an out-of-time grievance in order to have exhausted his administrative remedies. The district court quoted the following language from *Guarino*: "The law is clear in this Circuit that inmates/prisoners must have sought to file out-of-time grievances and/or grievance appeals in order to exhaust their administrative remedies as required under the PLRA." *Id.* at *4.

The district court erred in applying *Guarino* to Mr. Forde's situation. The case *Guarino* relied on, *Harper v. Jenkin*, 179 F.3d 1311 (11th Cir. 1999), dealt with Georgia's prison system, and with Georgia's administrative grievance procedures, which specifically required an out-of-time grievance to be filed. *See id.* at 1312 (noting that the "Georgia State Prison Inmate Grievance Procedure No. 503.1 allows the grievance coordinator to waive the time period for filing a grievance"). The district court should not have applied the reasoning of a case which addressed Georgia's prison grievance system to Mr. Forde's claim against Officer Salazar, an employee of the Federal Bureau of Prisons, because the two penal systems' grievance procedures are not necessarily the same. The question

10

here is whether the BOP permits or requires an out-of-time grievance under the circumstances presented.

Officer Salazar's argument that Mr. Forde never raised the unavailability of the grievance procedures is also incorrect. Officer Salazar cites the district court's order when explaining the reasons it says Mr. Forde gave for his failure to exhaust his administrative remedies: "Forde has claimed in the district court and on appeal that he did not file an administrative claim because he was very weak after his seizure, [that] he was transferred to another facility approximately one-week later and that he did not learn of the alleged failure of the FDC to respond to his medical needs until he met his former cellmate at another facility and the cellmate told him what happened."

Notably, however, neither Officer Salazar nor the district court listed the fourth reason Mr. Forde gave for his failure to exhaust. In his response to the motion to dismiss, Mr. Forde argued in part that he could not have known about the BOP grievance procedures, including any out-of-time grievance procedure, because he never received an Inmate Handbook. The district court did not address this contention by Mr. Forde. In *Goebert,* we held that because no inmate was permitted to see the jail's general operating procedures—which explained the process for prisoners to appeal an adverse decision pertaining to a grievance—

11

those procedures were not "available" and, thus, Ms. Goebert was not required to exhaust. *See Goebert*, 510 F.3d at 1322–24.

Although neither party addressed whether the BOP has an out-of-time grievance procedure, our independent research indicates that 28 C.F.R. § 542.14(b), titled "Extension," does allow for the delayed filing of a grievance for "valid reasons." The BOP Handbook similarly says that a grievance must be filed within 20 days "unless it was not feasible to file within that period of time and should be documented in the complaint." *See* BOP Handbook at 41. But neither party mentioned or addressed these provisions, and the district court did not have the opportunity to consider whether an extension—under the circumstances— would have been available to Mr. Forde under § 542.14(b). We remand to the district court to make this determination in the first instance and, if necessary, to take evidence from the parties on the issue.

## V

Finally, we address one issue which, though not raised by Mr. Forde in his brief, deserves attention. On August 23, 2016, the district court, believing that Mr. Forde had not objected to the magistrate judge's report and recommendation, ruled that no clear error existed on the face of the record, and dismissed Mr. Forde's complaint as to Officer Salazar for failure to exhaust administrative remedies. The

12

district court stated: "While the Court is sympathetic to [Mr.] Forde's experience, it cannot waive the administrative filing requirement under these circumstances."

Mr. Forde did, however, timely object to the magistrate judge's report and recommendation. In his objection, Mr. Forde stated that he received a copy of the report and recommendation on August 8, 2016. He signed his objection on August 16, 2016, and the envelope in which it was mailed was postmarked in Raleigh, North Carolina, on August 17, 2016. The objection was filed in the district court on August 23, 2016, the same day the district court issued its dismissal order. The district court, unaware of the objection until after it issued its order, treated Mr. Forde's objection to the report and recommendation as a motion for reconsideration of its August 23, 2016, order, and found the motion had not stated sufficient grounds to reconsider its previous order. This was error.

Federal Rule of Civil Procedure 72(b)(1), which governs the dispositive pretrial orders of magistrate judges, states that "[a] party may serve and file objections to the order within 14 days after being served with a copy." Rule 72(b)(2), titled "Objections," states, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations." Rule 72(b)(3), titled "Resolving Objections," requires the district court to conduct a *de novo* review of any part of the report and recommendation which has been properly objected to.

The prison mailbox rule provides that a *pro se* prisoner's legal submission is considered filed on the date it is delivered to prison authorities for mailing. *See Jeffries v. United States*, 748 F.3d 1310, 1314 (11th Cir. 2014). *Houston v. Lack*, 487 U.S. 266, 276 (1988), which established this rule for *pro se* filings, explained that the rule was appropriate because a prisoner necessarily loses control of his filing when he gives it to the prison authorities. We later added that the rule makes sense because pro *se* prisoners cannot "file personally in the clerk's office, . . . utilize a private express carrier, . . . [or] place a telephone call to ascertain whether a document mailed for filing arrived." *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993).

It is clear from the record that Mr. Forde's objection was timely filed when delivered to prison authorities on August 16, 2016. As a result, the district court was required to conduct a *de novo* review of the report based on the objection.

## VI

We reverse the district court's Rule 12(b)(1) dismissal and remand for further proceedings consistent with this opinion. On remand, the district court should direct the parties to brief the applicability of 28 C.F.R. § 542.14(b) and page 41 of the BOP Handbook in Mr. Forde's case. The district court should also address (and if necessary take evidence on) Mr. Forde's contentions that he did not know about the possibility of an extension for filing a grievance, and that the

14

grievance procedures were "unavailable" to him because he learned of the alleged misconduct too close in time to the closing of the statute of limitations to allow him to complete the full BOP Administrative Remedy Program.

**REVERSED AND REMANDED.**